**Milton Lewis JACOBS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Feb. 9, 1976.

Decided May 12, 1976.

William C. Wagner, II, Dover, for defendant below, appellant.

Harrison F. Turner, Deputy Atty. Gen., Dover, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY, Associate Justice and BROWN, Vice Chancellor.

BROWN, Vice Chancellor:

Appellant, Milton Lewis Jacobs, appeals from his conviction and sentence on three charges of kidnapping and one charge each of burglary, conspiracy, robbery, theft and possession of a deadly weapon during the commission of a felony. Appellant was originally convicted by a jury and given sentences totalling thirty years in the aggregate. He appealed to this Court and his conviction was reversed and the cause remanded for a new trial. Upon retrial he was again convicted by a jury and was sentenced, this time by a different judge, to a total of thirty-five years.*

Appellant attacks the validity of his second conviction and sentence on three grounds. First, he contends that he has been denied the due process of law guaranteed him under the State and Federal Constitutions by the refusal of the Trial Judge to allow certain voir dire questions to be asked of the jury panel during the selection of the jury. Second, he contends that he is entitled to an acquittal on the evidence since he was convicted solely on the uncorroborated testimony of two alleged accomplices. Third, he argues that he has been denied due process of law by virtue of the fact that he was given a greater sentence upon his second conviction than he received upon the first. We deal with these contentions in the order stated.

I.

A list of eighteen questions were submitted by the appellant to the Trial Judge to be asked of the jury panel. Of these the Trial Judge refused to ask twelve. The rejected questions can be put into three categories. One group of questions concerned the previous experience of the jurors, or members of their families, as victims of a crime. They were as follows.

"Have any of you ever been the victim of a crime?

Have you been a victim of a crime similar to that charged here?

Have you or any members of your families ever been the complaining witness in a criminal case?"

The second group of questions concerned the willingness of the jurors to follow the Court's instructions on the law regarding the weight to be given to the testimony of an accomplice. They were as follows:

"Do you understand what is meant by the term 'accomplice?'

Do you understand that the testimony of an accomplice is considered to be testimony from a tainted source and must be scrutinized by you with great care and caution?

Do you further understand that this rule becomes impartial [sic] when there is nothing in the evidence, direct or indirect to corroborate the alleged accomplices accusations?

If I instruct you that without such corroboration you should not find the defendant guilty unless, after careful consideration of the alleged accomplice's

---

\* The sentences are as follows: 20 years on each of the three kidnapping charges to run concurrently from August 18, 1973 to August 17, 1993; 7 years each on the theft and conspiracy charges to run concurrently with the kidnapping charges from August 18, 1973 to August 17, 1980; 15 years each on the burglary, robbery and weapons charges to run concurrently with each other, but consecutively as to the kidnapping charges, commencing August 17, 1993 and ending August 16, 2008; thus making the total of the sentences thirty-five years, commencing August 18, 1973 and ending August 16, 2008.

testimony, you are satisfied beyond a reasonable doubt that it is true and you are satisfied beyond a reasonable doubt that you may safely rely upon it, will you follow my instruction?"

The third group of questions dealt with the State's burden of proof and the right of a criminal defendant to remain silent. As submitted, they were as follows:

"Do you agree with the proposition that the defendant has no obligation to prove, or disprove, any fact, but may remain silent?

If the defendant does not testify, will you follow my instruction that you may draw no inference from his failure to take the witness stand?

You understand, do you not, that the burden of proof is always on the prosecution, and that the defendant need not present any evidence in his behalf?

You also understand, do you not, that the defendant need not testify in his own behalf?"

Finally, at the request of the appellant, the panel was asked whether any of them were close friends of, or related to, either the victims of the crime or their fathers, mothers, brothers, sisters or wives. However, the Trial Judge refused to ask the additional question,

"Do you know them?"

Appellant relies on Criminal Rule 24(a) of the Superior Court which provides that "the court shall permit or conduct such examination as is reasonably calculated to ascertain prejudice of a juror." He argues that all of the rejected questions were designed to do just that, and that the refusal of the Trial Judge to ask them worked a clear prejudice to the appellant and denied him due process. We find this contention without merit.

Clearly there is no right in a criminal defendant to propound all voir dire questions to a jury panel such as he, in his judgment, deems appropriate. Rather the scope of voir dire examination lies in the broad discretion of the trial judge, and is subject to review only for abuse of that discretion. Essential fairness is the standard. *Parson v. State,* Del.Supr., 275 A.2d 777 (1971); *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). The sole purpose of voir dire examination in this State is to enable the judge to determine whether a prospective juror is qualified and able to render an impartial verdict upon the evidence and the law. "Any questions which go beyond the ascertainment of this ultimate fact are entirely irrelevant to the voir dire examination and are properly struck by the trial judge." *Parson v. State, supra,* at 783. This is particularly true as to questions which tend to argue the case in advance or which are designed to indoctrinate the jury or ascertain the advance reaction of its members to particular issues involved in the trial. *Parson v. State,* supra; *State v. Mendill,* 141 Conn. 360, 106 A.2d 178 (1954). Compare also, *Hunter v. State,* Tex.Cr.App., 481 S.W.2d 137 (1972); *State v. McCauley,* La.Supr., 272 So.2d 335 (1973); *State v. Osbey,* 213 Kan. 564, 517 P.2d 141 (1974); *Stack v. State,* 234 Ga. 19, 214 S.E.2d 514 (1975).

We are of the opinion that the foregoing questions fall within the prohibition of being irrelevant and in excess of the purpose of voir dire examination, and as a consequence we find no abuse of discretion on the part of the Trial Judge in refusing to ask them.

II.

As to the accomplice testimony, appellant asserts that the testimony of two witnesses for the State, who admitted participation in the crimes along with the appellant, was inconsistent in certain details and was procured as a result of the willingness of the State to drop certain charges against them in return for their admissions of guilt and

cooperation. He argues the inconsistencies, when coupled with the manner in which the admission of their own criminal involvement was obtained, should have prohibited the jury from concluding beyond a reasonable doubt that the incriminating testimony of the two witnesses was true.

A short answer to this is that the jury members apparently did believe the accomplice testimony, despite the fact that the above factors were argued to them by appellant as reasons why they should not. Corroboration of an accomplice's testimony is not absolutely essential to the competence of the evidence introduced thereby. *Bland v. State*, Del.Supr., 263 A.2d 286 (1970), *O'Neal v. State*, Del.Supr., 247 A. 2d 207 (1968), and whether such testimony has been impeached is a determination to be made by the jury in its function of passing upon the credibility of the witnesses. The Trial Court gave an appropriate instruction that the testimony of the alleged accomplices should be viewed with "suspicion and great caution." Appellant took no exception to the charge. Under the circumstances, we see no basis to disturb the verdict for this reason. *Zutz v. State*, Del.Supr., 2 Storey 492, 160 A.2d 727 (1960).

### III.

Finally, appellant relies on the holding of the United States Supreme Court in *North Carolina v. Pearce*, 395 U. S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) for his argument that he has been denied due process of law because the total sentence received by him on his second conviction is five years greater than the total sentence he received on his first conviction. In that case it was made clear that there is no constitutional prohibition against imposing a greater sentence for a subsequent conviction after a successful appeal by a criminal defendant of the first. As stated at 395 U.S. 723, 89 S.Ct. 2079, 23 L.Ed.2d 668:

"A trial judge is not constitutionally precluded . . . from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 93 L.Ed. 1337. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams v. New York*, supra, that a State may adopt the 'prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.' Id. 337 U.S. at 247, 69 S.Ct. at 1083."

The Court went on to hold, however, that due process does require that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial and second conviction. Moreover, so that a defendant in such a situation may be freed of any apprehension of retaliatory motivation on the part of the sentencing judge, the reasons for the more severe second sentence (1) must affirmatively appear in the record and (2) "must be based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. 726, 89 S.Ct. 2081, 23 L.Ed.2d 670.

This rule of *Pearce* was subsequently reaffirmed in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (which held, however, that the requirement was not applicable where the greater sen-

tence was imposed by a different court after a trial *de novo* in a two-tier trial system) and in *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (dealing with a situation where the second sentence was imposed by a jury in a criminal justice system wherein sentencing is part of the jury function). Still later, in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), in reiterating that protection against vindictive sentencing was the pivotal consideration, the Supreme Court gave the following interpretation of its holding in *Pearce* at 417 U.S. 25, 94 S.Ct. 2101, 40 L.Ed.2d 633:

> "Because 'vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial,' [395 U.S. 725, 89 S.Ct. 2072], we held that an increased sentence could not be imposed upon retrial *unless the sentencing judge placed certain specified findings on the record.*" (Emphasis added.)

 Thus, from the foregoing decisions, it is clear that the Due Process Clause of the Fourteenth Amendment has now been construed to require that where the second sentence upon retrial in a state court is greater than the first "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *North Carolina v. Pearce, supra,* at 395 U.S. 726, 89 S.Ct. 2081, 23 L.Ed.2d 670. It is equally clear in the present case that the record before us contains no indication of the reason for the additional five years being added to the overall sentence of the appellant. At least if it does, we have not been referred to it. As such, the present sentence cannot stand on its own.

### IV.

Accordingly, the record is remanded to the Court below with instruction to the sentencing Judge to either supplement the record by setting forth his reasons for increasing the sentence over that imposed on appellant's previous conviction or, if such be the case, identifying where in the record of the proceedings his reasons have already been set forth. This shall be accomplished and the record returned to this Court for further review within thirty days, for which purpose jurisdiction is reserved. As to the remaining grounds for appeal, the judgment of the Court below is affirmed.