**Milton L. JACOBS,**

v.

**Supt. Walter REDMAN,**

**Milton Lewis Jacobs, Appellant.**

**No. 78–2557.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 15, 1979.

Decided Feb. 19, 1980.

John E. Babiarz, Jr. (argued), Francis J. Murphy, Morris, Nichols, Arsht, & Tunnel, Wilmington, Del., for appellant.

Francis A. Reardon (argued), Dept. of Justice, Wilmington, Del., for appellee.

Before HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

1. Milton Jacobs, a prisoner at the Delaware Correctional Center, appeals the dismissal of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (1976). The appellant, convicted in Delaware Superior Court and sentenced to thirty-five years in prison for his participation in the kidnap, armed robbery of a department store in Dover, Delaware,[1] challenges his conviction on two grounds: that the trial court's refusal to ask certain questions on voir dire denied him an impartial jury; and that the evidence at his trial was insufficient to support his conviction. He also contends that his thirty-five year sentence deprives him of due process of law since it was five years longer than the sentence which he received pursuant to a prior conviction for the same crimes which was subsequently vacated on appeal. Although we are troubled by appellant's voir dire challenge, we affirm the denial of habeas corpus from his conviction because we do not find a constitutional violation. However, we agree with appellant that the thirty-five year sentence violates the dictates of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Accordingly, the order of the district court will be reversed in part. Pending the resentencing of Jacobs to a term of not more than thirty years, we will remand the cause to the district court. Upon resentencing, the writ is to be dismissed.

## I

2. Milton Jacobs was originally convicted in Delaware Superior Court for his participation in an armed robbery and was sentenced to thirty years in prison. *See Jacobs v. State*, 358 A.2d 725, 727 (Del. 1976). This conviction was reversed by the Delaware Supreme Court and remanded for a new trial. *Jacobs v. State*, 344 A.2d 385 (Del.1975) (table of decisions without published opinions). Jacobs was retried and was once again convicted. This time, however, he was sentenced to a prison term of thirty-five years. It is this second conviction and its thirty-five year sentence which provide the subject matter for appellant's habeas petition.

3. Prior to the second trial, appellant submitted a list of eighteen proposed questions to be asked on voir dire. The trial judge refused to ask twelve of the questions. One group of proposed questions concerned the prior experience of the potential jurors as victims of crimes.[2] A second group inquired into the jurors' understanding of the nature of testimony by an accomplice and the willingness of the jurors to follow the court's instruction as to the weight to be given to accomplice testimony. A third group of questions asked whether the veniremen understood that the burden of proof was on the State and whether they would follow the court's instructions concerning the right of the defendant to remain silent. Finally, although the court asked whether any of the jurors were related to or were close friends of the victims of the crime, the court refused to ask whether the veniremen knew the victims. *Jacobs v. State*, 358 A.2d at 727–28.

---

1. The crime involved entering the store manager's house, holding his family at gunpoint, and forcing the manager to take the perpetrators into the store. The appellant was convicted of three counts of kidnapping and one count each of burglary, conspiracy, robbery, theft and possession of a deadly weapon during the commission of a felony. *See Jacobs v. State*, 358 A.2d 725, 727 (Del.1976).

2. Specifically, the questions asked whether any of the veniremen had ever been the victim of a crime; whether any of them had ever been the victim of a crime similar to the crime charged against Jacobs; and whether any of the veniremen or their families had ever been a complaining witness in a criminal case.

4. At trial, the government's evidence centered upon the testimony of two of Jacobs' coconspirators. While one of the coconspirators, Ricky Upshur, was on the stand, the following examination took place:

Q. [by the prosecution] Rick, why didn't you testify in this case yesterday?

A. Because I'm at Delaware Correctional Center or in Delaware's Prison System, period, and people that testify against other people, they find it rather unhealthy upon their return.

\* \* \* \* \* \*

Q. Did anybody ever threaten you?

A. Did anybody ever threaten me?

Q. Concerning your testimony.

A. You could say. What it amounts to is a snitch is not tolerated, he's dealt with in the prison system. My life is in danger as soon as I go back.

Q. Why do you say that? Who are you afraid of?

A. Right now the whole prison.

\* \* \* \* \* \*

Q. Can you name one or two or any specific people that you are afraid of?

A. Yes. I am afraid—right now I am afraid of David Keys and Milton Jacobs.

The appellant then took the stand in his own defense. He denied participation in the crime, testifying that he was at home playing gin rummy at the time the incident occurred.

5. Following appellant's conviction and sentencing, he appealed, contending that he was denied due process of law by the refusal of the trial judge to allow certain voir dire questions to be asked of the jury, that he was entitled to acquittal on the evidence since he was convicted solely on the uncorroborated testimony of coconspirators, and finally, that he was denied due process of law because he was given a greater sentence on his second conviction than he had received upon his first. *Jacobs v. State*, 358 A.2d at 727. Although the Delaware Supreme Court upheld the conviction, it retained jurisdiction and remanded the case to the sentencing judge to allow him to supplement the record with reasons for having increased the sentence. *Id.* at 730.

6. On remand, the trial judge advanced the following reasons for the increased sentence.

Reference to the presentence reports will show that the sentence I imposed was recommended after both the first and second trials.

After presiding at the second trial (I did not preside at the first) I considered the recommendation fair and accordingly adopted it.

A comparison of the records of the two trials will reveal significant differences in them. The defendant testified at the second trial but not at the first. Also a witness at the second trial indicated that he was in fear of testifying against the defendant. This did not occur at the first trial.

I point out the above differences in the trials for the information of the Justices. I, of course, cannot state that had the evidence in the first trial been the same as that presented in the second that the first trial judge would have imposed the sentence I ultimately imposed.

If pressed for a reason for my imposing a longer sentence than the first trial judge I would have to simply cite general disagreement with his sentence.

The Supreme Court of Delaware affirmed the sentence.

7. Appellant then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976). The petition raises essentially the same contentions raised before the Supreme Court of Delaware although the second ground has been modified to allege a constitutional violation: that the conviction based on the uncorroborated testimony of accomplices denied petitioner due process of law due to the insufficiency of the evidence. The district court granted the State's motion for summary judgment and dismissed the complaint.

## II

**8.** Appellant's contention that he was denied due process because of the insufficiency of the evidence supporting his conviction is easily resolved. There is ample evidence in the record to support petitioner's conviction. One accomplice testified to planning the crime with Jacobs, delivering him to the scene, and subsequently calling the scene to talk with Jacobs on the phone. He further testified to receiving his share of the crime's proceeds from Jacobs. Another accomplice testified to planning the crime with Jacobs, arriving at the scene and entering the scene with Jacobs. Upon this evidence it cannot be said that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**9.** Appellant further argues that the evidence to support his conviction was constitutionally defective because it consisted entirely of the uncorroborated testimony of coconspirators.[3] This court has held, however, that "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *United States v. DeLarosa*, 450 F.2d 1057, 1060 (3d Cir.), *cert. denied*, 405 U.S. 927, 405 U.S. 957, 92 S.Ct. 978, 30 L.Ed.2d 800 (1971); see *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *DeCarlo v. United States*, 422 F.2d 237, 240 (9th Cir. 1970). Accordingly, appellant's argument is without merit.

**3.** We assume, for the purpose of this discussion, that the coconspirator's testimony was uncorroborated. We note, however, that the victims of the crime testified and were able to identify the clothing worn by the perpetrators.

**4.** This right is applied as a restriction against the States through the due process clause of Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

**5.** For example, appellant wanted to know if the veniremen understood that:
1) the testimony of an accomplice is considered testimony from a tainted source and

## III

**10.** Appellant next contends that the failure of the trial judge to ask certain questions on voir dire denied him his Sixth Amendment right to a trial by an impartial jury,[4] as well as his right to due process of law. See *Ristaino v. Ross*, 424 U.S. 589, 595 n. 6, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

**11.** Appellant proposed to question the veniremen on their willingness to follow the Court's instructions as to the weight to be given accomplice testimony, the burden of proof, and the right of defendant to remain silent. He also proposed to ask the jurors if they "understood" or "agreed with" various propositions of law favorable to appellant's position.[5] The trial judge did not violate appellant's constitutional rights in excluding these questions. As this court stated in *United States v. Wooton*, 518 F.2d 943, 946 (3d Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975), while considering the failure of a federal trial court to inquire into the jurors acceptance of the reasonable doubt standard:

> [A]ppellant confuses an inquiry as to whether one's personal convictions would preclude one from rendering an impartial verdict—a proper function of voir dire—with an inquiry as to whether one agreed with a rule of law. In the division of responsibilities between judge and jury, the jurors have no prerogative to question in the slightest degree the law to be applied to an issue, as announced by the court in its instructions.

must be scrutinized with great care and caution;
2) this rule [of accomplice testimony] becomes impartial [sic] when there is nothing in the evidence, direct or indirect to corroborate the alleged accomplice testimony;
3) the burden of proof is always on the prosecution, and that the defendant need not present any evidence in his behalf.
*Jacobs v. State*, 358 A.2d at 727–28. Appellant also proposed to ask the veniremen "agree[d] with the proposition that the defendant has no obligation to prove, or disprove, any fact, but may remain silent." *Id.*

We went on to hold that it was not an abuse of discretion for the trial court to preclude voir dire examination pertaining to a question of law involved in the case. 518 F.2d at 947; *accord, United States v. Price*, 577 F.2d 1356, 1366 (9th Cir. 1978), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 835 (1979); *United States v. Crawford*, 444 F.2d 1404, 1405 (10th Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971); *United States v. Gillette*, 383 F.2d 843, 849 (2d Cir. 1967). *But see United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973). The questions proposed by appellant in this case are of the same type requested in *Wooton*.[6] Accordingly, the failure to ask these questions would not have been abuse of discretion had the case been tried in federal court. It follows, a fortiori, that appellant's constitutional rights were not violated.

■ 12. The failure of the trial court to inquire into the previous experience of the veniremen as victims of crime raises a more difficult problem. For appellant to prevail in the instant case, before us on habeas corpus, we must find that the failure to ask the requested questions violated his constitutional rights. 28 U.S.C. § 2254 (1976). This court has held that it is reversible error for a federal district court to fail to ask questions similar to the ones here requested. *United States v. Poole*, 450 F.2d 1082 (3d Cir. 1971). *Poole*, however, did not explicitly rest its holding on either the Constitution, or on this court's supervisory powers over the lower federal courts. Because there is no mention of reliance on the Constitution, and because it was unnecessary to reach the constitutional question to decide that case, we interpret *Poole* as resting solely on our supervisory powers.[7] We are, therefore faced in this case, with an open constitutional question.

13. Appellant would have us find that the failure to ask these questions infringed upon his constitutional rights. This contention raises a difficult question. In *United States ex rel. DeVita v. McCorkle*, 248 F.2d 1 (3d Cir.) (en banc), *cert. denied*, 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957), a juror in an armed robbery trial who had recently been an armed robbery victim concealed this information despite questioning on voir dire. This court stated that "[t]he subsequently discovered undisputed facts make out colorable bias in a juror who was a part of the verdict", *id.* at 8, and held that defendant's constitutional rights had been violated. We noted that the jury in the case was not, as insisted upon by the Fourteenth Amendment, "the most impartial tribunal the reasonable needs of society will permit" because "[o]ne who has been assaulted, threatened with a deadly weapon and robbed is not likely to forget or forgive nor to treat lightly or even fairly similar conduct in others. This is a normal human reaction following customary behavior, expected and anticipated by the background of experience." *Id.* at 8. *But cf. Government of Virgin Islands v. Bodle*, 427 F.2d 532 (3d Cir. 1970) (presence on rape jury of brother of rape victim, although reversible error under federal court's supervisory power, does not violate defendant's constitutional rights) (dictum). We are also aware that voir dire is the most efficacious method of insuring that biased veniremen will not actually serve on the jury. *See Morford v. United States*, 339 U.S. 258, 259, 70 S.Ct. 586, 587, 94 L.Ed. 815 (1950) (per curiam); *United States v. Poole*, 450 F.2d 1082, 1083 n. 2 (3d Cir. 1971).

14. Notwithstanding the above, although we are deeply troubled by the inexplicable failure of the trial court to ask the requested questions, we do not believe that

---

**6.** We further note that the trial court's instructions on the issues relevant to these questions were not objected to.

**7.** Moreover, in *Poole* we relied on *Government of Virgin Islands v. Bodle*, 427 F.2d 532 (3d Cir. 1970), which was explicitly based on our supervisory powers, 427 F.2d at 534. The only case cited in *Poole* which was explicitly based on

the Constitution, *United States ex rel. DeVita v. McCorkle*, 248 F.2d 1 (3d Cir.) (en banc), *cert. denied*, 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957), was distinguished as a case involving "actual and demonstrated bias" as opposed to "only the denial of an opportunity to probe for possible bias." *United States v. Poole*, 450 F.2d at 1083.

the failure to ask such questions rises to the level of constitutional error. Unlike *DeVita* which deals with the actual presence of a biased juror, we deal here only with a mechanism for exploring whether such a juror is present. This fact must guide our inquiry.

■ 15. The determination of the scope of voir dire is one context where the supervisory powers of the federal court allows for a "good deal closer supervision than does the Fourteenth Amendment." *Ham v. South Carolina*, 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46 (1973); *cf. Ristaino v. Ross*, 424 U.S. 589, 597 n. 9, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976) (although questions on racial prejudice were not constitutionally required under facts of case by Fourteenth Amendment, court would have required under supervisory power). The trial judge is vested with broad discretion in the determination of the scope of voir dire and the selection of questions to be asked. *Ristaino v. Ross*, 424 U.S. at 594, 96 S.Ct. at 1020; *Ham v. South Carolina*, 409 U.S. at 528, 93 S.Ct. at 851. As the Supreme Court held in *Ristaino*, "[t]he Constitution does not always entitle a defendant to have questions posed during *voir dire* specifically directed to matters that conceivably might prejudice veniremen against him." 424 U.S. at 594, 96 S.Ct. at 1020.

■■ 16. In *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976), the Supreme Court held that the failure to inquire into racial prejudice on voir dire was not a constitutional violation despite the fact that a black defendant was charged with the armed robbery and assault of a white man. *Id.* at 590, 96 S.Ct. at 1018. The court was presented with the task of distinguishing *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), which had held that the failure to inquire into racial prejudice constituted a violation of constitutional rights under circumstances where the defendant was a civil rights activist whose defense was that he had been framed on the drug offense he was charged with by law enforcement officers "out to get him" for his civil rights activities. 409 U.S. at 525, 93 S.Ct. at 849. The court, in *Ristaino*, established as a test that "under all of the circumstances presented there [be] a constitutionally significant likelihood that, absent questioning about racial prejudice, the jurors would not be as 'indifferent as [they stand] unsworne' ", *id.* 424 U.S. at 596, 96 S.Ct. at 1021, and distinguished *Ham* by noting that racial issues "were inextricably bound up with the conduct of the trial," 424 U.S. at 597, 96 S.Ct. at 1021, which increased the likelihood of a biased jury. Although the Court provided no guidance as to what would constitute a "constitutionally significant likelihood," we do not think it more likely that appellant was denied his right to an impartial jury here than under the facts presented in *Ristaino*. Accordingly, we hold that appellant's constitutional rights were not, on the facts of this case, violated by the trial court's failure to inquire into the prior experience of veniremen as the victims of crime.[8]

■ 17. Finally, the trial court failed to ask the requested questions of whether the veniremen "knew" the victims of the crime. It did ask, however, whether the veniremen were close friends or relatives of the victims, their fathers, mothers, brothers, sister, or wives. It also inquired into whether the veniremen had heard anything about the facts of the case outside of the courtroom. We believe that these together were sufficient to elicit information sought by defendant and that these questions satisfied the requirements of the Constitution, although a more perfect probe of prejudice on voir dire would have included such a question.

8. We note that appellant in this case requested a question probing prior experience of members of the families of the veniremen. However, as we stated in *Government of Virgin Islands v. Bodle*, 427 F.2d 532 (3d Cir. 1970), the actual presence on the jury of the relative of a crime victim would not violate defendant's constitutional rights. Therefore, the failure to ask this question could not be such a violation.

## IV

18. We now turn to appellant's contention that the imposition of the thirty-five year sentence following his second conviction violated his right to due process of law. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court considered collateral attacks under both the double jeopardy and the due process clauses on the validity of the imposition, on retrial following a successful appeal, of a second sentence which was more severe than the original sentence. The Court concluded that the double jeopardy clause imposes no absolute bar to a more severe sentence on reconviction, and stated that the trial judge was allowed to consider "events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Id.* at 723, 89 S.Ct. at 2079 (quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949)). However, the Court emphasized that it would be impermissible to impose a more severe sentence on retrial for the purpose of punishing a defendant for the exercise of his right to appeal.

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

395 U.S. at 725, 89 S.Ct. at 2080.

19. To eliminate the potential for vindictiveness and the fear of retaliation, the Court established a broad prophylactic rule.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, *the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.* And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726, 89 S.Ct. at 2081 (emphasis added).

20. In the instant case the trial judge set forth four reasons in support of Jacobs' increased sentence. The first reason advanced, that the court agreed with the presentence reports of the first and second trials which both recommended thirty-five years, clearly fails to satisfy the requirement that it relate to identifiable conduct on the part of the defendant. The court's "general disagreement" with the first sentence is similarly insufficient.[9]

21. The trial court also noted that a witness at the second trial indicated that he was in fear of testifying against the defendant. An examination of the trial transcript, however, once again reveals that this reason is not supported by "objective information concerning identifiable conduct on the part of the defendant." *Id.* Ricky Upshur, the witness in question, testified at first that his fear was a general one, based on the treatment afforded a "snitch" in the prison community. When Upshur finally named Jacobs, it was in response to a question which asked Upshur of whom he was specifically afraid. While this question established the witness's state of mind, it did not reveal the cause of the fear to be conduct on the part of Jacobs, rather than the rational apprehension of one who would perceive himself to be most threatened by the object of his testimony. The require-

---

9. Because we conclude below that none of the reasons advanced by the trial court satisfy the requirements of *Pearce*, we need not decide whether the mere presence of an invalid reason would render invalid an increased sentence despite the presence of other, valid reasons.

ment of *Pearce*, therefore, is not satisfied by this reason.

 22. The final reason advanced by the trial court, that the appellant testified at his second trial, but not at the first, does relate to conduct of the defendant subsequent to the first sentence. However, the mere fact that a defendant asserts his right to testify, *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *cf. Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (the right to offer the testimony of witnesses and to compel their behavior), clearly does not negatively reflect on the defendant's life, health, habits, conduct or moral propensities in such a way as to justify the imposition of an increased sentence. The mere fact that a defendant testifies cannot justify the imposition of an increased sentence.

23. It is possible that the trial court concluded that the defendant was lying in his testimony. This would support an increased sentence. *See United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). This conclusion, however is nowhere stated by the sentencing judge. We believe that *Pearce* requires a sentencing judge to articulate any reason upon which he relied in imposing an increased sentence. *See United States v. Tucker*, 581 F.2d 602, 605–06 (7th Cir. 1978); *Accord United States v. McDuffie*, 542 F.2d 236, 241–42 (5th Cir. 1976). The goal of the *Pearce* rule, that apprehension of vindictiveness be allayed, does not permit a defendant to be left to speculate as to the true reason for an increased sentence. Moreover, reviewing courts should not be required to divine the cause for the new sentence.[10] This is particularly true where, as here, the articulated reason not only implicates the right to an unfettered appeal which underlay *Pearce*, but also implicates one of the most basic ingredients of due process of law, the right of a defendant to be heard in his own defense. *See In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

24. We conclude, therefore that the statement of the sentencing judge does not comply with the requirements of *North Carolina v. Pearce*. Accordingly, the decision of the district court will be reversed in part. We adopt the procedure utilized by the fifth circuit in *Frank v. Blackburn*, 605 F.2d 910, 916 (5th Cir. 1979); pending the resentencing of Jacobs to a term of not more than thirty years, we will remand the present cause to the district court. Upon resentencing, the writ is to be dismissed.

---

10. We emphasize that we do not here extend the requirement that a trial judge articulate the reasons underlying his sentencing decision be-

yond those situations in which such a procedure is mandated by *Pearce*. *See Washington v. Regan*, 510 F.2d 1126, 1129 (3d Cir. 1975).