**UNITED STATES of America**

v.

**CARRASQUILLO, Mildred, Appellant.**

**No. 83–1468.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1984.

Decided April 20, 1984.

As Amended May 14, 1984.

Jeffrey Staniels (argued), Joseph M. Miller, Asst. Public Defenders, Defender Ass'n of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, William B. Carr, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT, HIGGINBOTHAM and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The present case involves an appeal from a criminal conviction for distribution of heroin and aiding and abetting the distribution of heroin, in violation of 21 U.S.C.

---

§ 841(a)(1) and 18 U.S.C. § 2. Defendant-appellant Mildred Carrasquillo asserts that the district court erred in imposing an increased sentence following her reconviction after her original conviction had been reversed as the result of a successful appeal. This court must consider whether the reasons articulated by the district court to justify the increased sentence are constitutionally permissible considerations under the due process requirements of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

We conclude that the reasons articulated by the district court do not comport with the standard set forth in *Pearce* and will therefore vacate the sentence below and remand the matter for resentencing.

## I.

Various aspects of this case have been before us on two previous occasions. On November 1, 1980, Mildred Carrasquillo ("Carrasquillo"), pursuant to the rule of *United States v. Zudick*, 523 F.2d 848 (3d Cir.1975),[1] entered a conditional guilty plea to two counts of an indictment charging her with distribution of heroin in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting that crime in violation of 18 U.S.C. § 2. On December 22, 1980, Judge McGlynn sentenced Carrasquillo to concurrent three-year prison terms to be followed by a special parole term of three years.

In *United States v. Carrasquillo*, 667 F.2d 382 (3d Cir.1981), this court reversed the judgment and remanded the matter with directions that the district court determine whether the indictment should be dismissed with or without prejudice for violation of the Speedy Trial Act, 18 U.S.C. § 3162(a)(2). Judge McGlynn subsequently determined that the indictment should be dismissed without prejudice.

The United States then filed an information charging Carrasquillo in two counts with violating 21 U.S.C. § 841(a)(1), alleging the same two incidents to which she had pleaded guilty in 1980. Upon defend-

ant's motion that Judge McGlynn recuse himself, the case was transferred to another judge.

Carrasquillo again entered a plea of guilty to the two counts on September 14, 1982, and following a hearing on November 16, 1982, was sentenced to a twelve-year prison term on Count I, with parole eligibility to be determined pursuant to 18 U.S.C. § 4205(b)(2), and to be followed by three years of special parole. On Count II, the execution of a fifteen-year term of imprisonment was suspended and a five-year probationary term was imposed to run consecutively to the prison term under Count I.

Carrasquillo appealed to this court challenging the validity of the sentence imposed upon reconviction inasmuch as it exceeded the original 1980 sentence by nine additional years of imprisonment and because the district court did not articulate reasons for the increase. Pursuant to the consent of both the United States Attorney and counsel for the defendant to remand this case, our court issued an order in *United States v. Carrasquillo*, C.A. No. 82–1764, directing the district court either to resentence Carrasquillo to a term not in excess of the original sentence or, alternatively, to articulate the reasons for an increase in sentence.

On June 20, 1983, the district judge explained the reasons underlying the difference between the December 22, 1980 sentence of Judge McGlynn and his November 16, 1982 sentence. He stated that the November 16, 1982 sentence was not a "harsher" or "longer" term than the original December 22, 1980 sentence, but constituted a restructuring of Judge McGlynn's earlier sentence. Appendix ("App.") at 6–7. He further stated that even assuming *arguendo* that the second sentence was more onerous, Carrasquillo's continued involvement and association with drug-related activities, as inferred from three intervening arrests on drug charges, in combination with her continued abuse of narcot-

---

**1.** In *United States v. Zudick,* 523 F.2d 848 (3d Cir.1975), this court endorsed the use of the

conditional guilty plea in appropriate circumstances.

ics, sufficed as "additional information" to justify the imposition of the harsher sentence. *Id.* at 39. On this basis, he ruled that "[t]he November 16, 1982 sentence will stand." *Id.* This appeal followed.

## II.

Carrasquillo maintains that (a) the sentence imposed on November 16, 1982 and reimposed on June 20, 1983 constituted an increased sentence when compared to that originally imposed on December 22, 1980; and (b) the reasons articulated on June 20, 1983 did not present sufficient objective information to justify the increase in sentence under *North Carolina v. Pearce.*

Contrary to the district judge's conclusion that the November 16, 1982 sentence was not longer or more onerous than the former sentence, the United States conceded both in its brief and at oral argument that the November 16, 1982 sentence was, in effect, an increased sentence.[2] (Appellee's Brief at 4; Transcript of January 10, 1984 oral argument at 13).

## A.

The due process standard formulated in *North Carolina v. Pearce* governs whether the increased sentence is justified by the reasons articulated on the record. In

North Carolina v. Pearce, the Supreme Court addressed the constitutional limitations upon the imposition of a more severe punishment after conviction for the same offense upon retrial. The Court held:

> [N]either the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, *in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'* Williams v. New York, 337 U.S. 241, 245 [69 S.Ct. 1079, 1082, 93 L.Ed. 1337].

395 U.S. at 723, 89 S.Ct. at 2079 (emphasis added).

The Court established a broad prophylactic rule intended to eliminate the fear of judicial retaliation because "a defendant ... successfully attacked his first conviction."[3] *Id.* at 725, 89 S.Ct. at 2080.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must

2. The Assistant U.S. Attorney and the counsel for the defendant agree that when the practical effect of a sentence imposed after reconviction following a successful appeal is to increase the amount of time which the defendant will serve in prison beyond that which he would have served under the original sentence, the sentencing judge has increased the severity of the punishment. *United States v. Williams,* 651 F.2d 644 (9th Cir.1981). Under the original sentence, the maximum term Carrasquillo faced was six years of incarceration and/or subsequent parole supervision. After resentencing, she faces twelve years of incarceration and/or parole and special parole supervision as to Count I and a maximum of fifteen years incarceration and/or parole supervision on Count II.

3. The court in *Pearce* focused on the problem of vindictiveness which manifests itself in the form of increased sentences and emphasized that vindictiveness against a defendant for successfully overturning the first conviction is constitution-

ally impermissible under due process of law. In order that such motivations do not deter defendants from exercising the right to appeal or to attack the first conviction collaterally, "due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." 395 U.S. at 725, 89 S.Ct. at 2080. Subsequent cases have stressed that "the defendant need not specifically allege vindictiveness in asserting that the second sentence was wrongfully imposed. It is the imposition of a harsher sentence giving the appearance of vindictiveness, not vindictiveness in fact, that is the basis of *Pearce.*" *United States v. Alvarado-Sandoval,* 557 F.2d 645 (9th Cir.1977). *See also Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *Moon v. Maryland,* 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970). We make no suggestion here that the motivating factor for the increased sentence was vindictiveness.

affirmatively appear. *Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.* And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081 (emphasis added). In *Pearce,* no reasons or justifications for the imposition of increased sentences were offered.

We held in *Jacobs v. Redman,* 616 F.2d 1251, 1259 (3d Cir.1980), that the imposition of an increased sentence deprived the defendant of due process because the reasons articulated failed to satisfy the requirements of *Pearce.* The case was remanded to the district court for resentencing to a term of not more than that originally imposed. This court must, in light of *Pearce* and *Jacobs,* evaluate the propriety of the reasons articulated on this record in justification of Carrasquillo's increased sentence.

### B.

The district court stated that the November 16, 1982 sentence was based on a review of representations made on behalf of the defendant by her attorney, the testimony of defendant's witness, Officer Jumper, the statements of the Assistant U.S. Attorney,[4] the comments of the defendant herself, and the presentence investigation report and discussions with probation officials.

The presentence investigation report disclosed that the defendant had been arrested three times on drug charges between December 22, 1980 and November 16, 1982. App. at 32–34. Relying on 18 U.S.C. § 3577, which provides that a federal court may not be limited in considering information concerning the background and character of the offender, the district court judge stated that although the charges had not been fully prosecuted, he could take the information into consideration. The judge explained:

> While this Court of course did not consider the three arrests as evidence of defendant's guilt for the crimes charged, the Court did consider that even after [the original] sentence defendant *continued to associate and involve herself with drug-related activities.*

App. at 35 (emphasis added). It was also considered "in passing" but not relevant to the sentencing that no conviction resulted from these arrests and all charges were terminated by *nolle prosequi.* App. at 35–36.

The court went on to point out that Judge McGlynn's original sentence had failed to deter the defendant's drug-related activities[5] as evidenced by a statement in the presentence report that "[i]t was noted

---

**4.** The Assistant U.S. Attorney did not make any recommendations as to his view of an appropriate sentence.

**5.** The district judge noted:
Despite defendant's continued drug-related activity, defendant exhibited the potential for rehabilitation through her attendance at drug-treatment program and through her cooperation with state police officials in prosecuting other drug offenders.
This Court endeavored to restructure defendant's sentence to provide an incentive for her to straighten up, and to provide substantial supervision by probation and parole officials. With defendant's salient factor score of five and defendant's estimated parole release guideline period of 12 to 16 months in mind,

this Court sentence [sic] defendant to a longer term of imprisonment on Count I to forcefully demonstrate to defendant that the Court will not tolerate any drug-related activity, that her actions were reprehensible, particularly those following her conviction and sentencing before Judge McGlynn, and that she must terminate any connections she has with illegal drug-related activity.
This sentence was also intended to provide an incentive for defendant to straighten herself out, to demonstrate good behavior, and to remain on good behavior while on parole and probation to avoid having to serve the remainder of her sentence on Count I, or the suspended sentence on Count II. App. at 10.

in the previous presentence report prepared that Ms. Carrasquillo was an abuser of narcotics. Two years later, this is still a problem with her." App. at 36. The court then states that *"[o]n the basis of this evidence* the Court chose not to impose a harsher punishment on defendant, but rather to restructure the type of sentence ..." *Id.* at 36–7 (emphasis added).

The addiction problems of Mildred Carrasquillo were not masked in this case, but were brought out clearly in the presentencing report, as well as each time she appeared before a district court judge. In his efforts to offer the trial judge insights on Carrasquillo's human plight, her counsel at sentencing declared that "[s]he has and continues to be a victim of drug dependency" and that she came from an environment "where drugs and controlled substances were passed around perhaps in the same manner as crackers and cheese in other environments."[6] App. at 23.

We recognize that the sentencing of a criminal defendant is always a difficult chore for even the most conscientious trial judge, and certainly the trial court below appreciated the arduousness of this task. As Judge Joseph L. Tauro has recently observed in his most thoughtful article:

The greatest single challenge facing our legal system today is that of designing and implementing fair and credible sanctions for criminal behavior .... Our sentencing process is imperfect, and inevitably so. It is, after all, administered by men and women wearing black robes who, despite their best efforts and intentions, are nothing more or less than mere mortals. Judges do their best, but there can be no doubt that our inherent imperfection has caused some irreparable injustice over the years, and that is tragic.

Tauro, *Sentencing: A View From the Bench,* 9 New Eng.J. on Crime & Civ. Confinement 323–24 (1983). When a defendant can be sentenced on a spectrum that ranges from probation to many years or even life in prison, a trial judge can have an extraordinary if not devastating impact on another person's life. This difficult sentencing process becomes even more complex, as if one is voyaging on uncharted seas, when the trial judge is dealing with an addict; our society still has only limited knowledge and no clear concensus, even among specialists, as to how a civilized society should most effectively deal with, limit, and hopefully eliminate drug addiction. Addicts often are persons who have lost much of their control or ability to deal responsibly with their lives.

6. After a Philadelphia policeman from the Narcotics Unit testified quite favorably in Carrasquillo's behalf, App. at 17–21, her counsel stated:

As Your Honor is probably aware, this proceeding is the end of a very long line for Miss Carrasquillo and myself. I have had this matter since July of 1980.

As Your Honor is probably aware, the matter has been in the Court of Appeals of this Circuit and has resulted in one of the only rulings from that Circuit on the Speedy Trial Act. During the pendency of this case, essentially from July of '80, my client has been on bail and for over two years has been supervised by Pretrial Services. That supervision has been stricken.

It has been difficult for Miss Carrasquillo, but I believe, based upon my discussions with Pretrial, that she has been a satisfactory supervised individual.

She has and continues to be a victim of drug dependency that is a result of her personality, her culture, and an environment where drugs and controlled substances are passed around perhaps in the same manner as crackers and cheese in other environments.

That is not by any way an attempt on my behalf to justify but rather to possibly explain her activity.

She is a mother. During the pendency of these proceedings she has given birth to a child. I have watched her and her youngest in my office on many occasions.

She is a devoted mother who cares for her children and does the best she can under the circumstances.

Obviously, the best thing in my mind would be for my client and her family to extricate themselves from that environment. That is beyond the power of this Court.

She has struggled. She has tried. She has attempted to and apparently successfully cooperated with the Philadelphia police.

I would request that the Court give her the benefit of that struggle, the benefit of those attempts, in fashioning a sentence.

App. at 22–4.

Nevertheless, the record demonstrates that when Mildred Carrasquillo appeared before Judge McGlynn in 1980 she was already an addict, one who had been hounded by or involved in the curse of taking drugs for years, to the extraordinary detriment of her mind and body. When she appeared before the instant trial judge she was still an addict. Can she be punished by having her original sentence increased severely for the *same* crime solely because she has not cured her addiction?

■ If the district judge had stated that he was increasing the sentence on the ground that Carrasquillo had been arrested, the controlling cases and the applicable statutes suggest that he could properly have taken those factors into consideration. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); 18 U.S.C. § 3577. However, we have here a case where the judge said that he "did *not* consider the three arrests as evidence of defendant's guilt for the crimes charged," although he did take into consideration the fact that she "continued to associate and involve herself with drug-related activities." App. at 35 (emphasis added). After his first disclaimer that he was disregarding the fact of the three arrests, we can only conclude that what he was considering was her drug addiction and not the crimes that she may have committed. But her drug addiction was not new information. Her drug addiction did not shed "*new* light upon the defendant's 'life, health, habits, conduct and mental and moral propensities.'" *Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079, *quoting Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (emphasis added). Drug addiction was not a *new* condition in her life, but unfortunately was a continuation of the same old problem that had ensnared her life for years—a continuing pattern of behavior that does not offer any new information concerning Carrasquillo's life, health, habits and conduct.[7]

Carrasquillo's case is different from that of *United States v. Sandoval*, 475 F.2d 542 (1st Cir.1973), where the defendant was arrested twice for narcotics violations and had jumped bail twice in the period between the initial sentencing and the resentencing. The district court stated that he relied on the arrests *and* bail forfeitures in increasing the sentence. Unlike the matter before this court, the district court in *Sandoval* relied on arrests as information of *new criminal conduct* as well as other information concerning the bail forfeitures to justify the increase in sentence.

■ Another distinguishing feature between the present case and *Sandoval* is that there is no indication that Rodriquez-Sandoval was addicted to drugs. Prior to and after the imposition of her original sentence Carrasquillo was an addict. That condition has *continued* and is inexorably

---

7. The establishment of *conduct,* such as intervening *criminal activity* subsequent to imposition of the original sentence may justify an increase in sentence. *See, e.g., United States v. Ulano,* 614 F.2d 1257 (9th Cir.1980) (increased sentence for conspiracy to distribute cocaine justified on basis of intervening arrests for illegal transportation of cocaine); *United States v. Young,* 573 F.2d 1137 (9th Cir.1978) (imposition of greater sentence for conspiracy to possess cocaine with intent to distribute justified on basis of subsequent indictment for drug trafficking). New information regarding new illegal conduct throws new light on a defendant's conduct and habits.

However, since the district court expressly stated that it was not relying on the intervening arrests as evidence of Carrasquillo's guilt with respect to the illegal activities for which she was arrested, the augmented sentence rests solely on "continued association and involvement with drug-related activities", App. at 35, a synonym for her addiction. Her addiction, by definition, is simply a continuation of past conduct. The courts have clearly held that even some new information, if based on activities which predated the original sentence and which were known to the court at the time of the original sentence, will not support a harsher sentence. *See Robinson v. Scully,* 690 F.2d 21, 24 (2d Cir.1982); *United States v. Williams,* 651 F.2d 644, 648 (9th Cir.1981); *United States v. Tucker,* 581 F.2d 602, 608 (7th Cir.1978) (concurring opinion).

intertwined with Carrasquillo's *continued* drug-related activities. The trial judge by his comment virtually declared that she was to serve nine additional years because she remained an addict—because "after Judge McGlynn's sentence defendant continued to associate and involve herself with drug-related activities." App. at 35. On the facts of this case we hold that she cannot have her sentence increased for the same incident solely because she is an addict.

### III.

Because of the unique facts of this case, it is important that we stress the limited nature of our holding. We are keenly aware that if a sentence is within the prescribed maximum there are severe limitations on our appellate review of the original sentence; however, this case raises a different issue, for here we are dealing with a constitutional prohibition that clearly limits the factors which a trial judge must consider and articulate before increasing the sentence of the first trial judge. This is not a case which addresses the appropriate penalty on the first sentence.[8] This is a case dealing with an augmentation of the first sentence for the same incident. This is not a case which deals with the issue of whether Carrasquillo could be prosecuted for any breach of the criminal law which occurred subsequent to her first conviction. Although she could be prosecuted for a different incident to the full extent of the law, and if a conviction was obtained, the maximum sentence could be imposed for a conviction for a *different* crime, the incident at issue is the *same* incident, the crime the *same* crime, the charges the *same* charges for which Carrasquillo was originally convicted (even though raised in a new indictment). After a reconviction, a succeeding judge cannot multiply the first sentence four-fold merely because Carrasquillo has not cured the addiction which was central to her first conviction. In sentencing the defendant, the trial judge said: "On the basis of this evidence the Court chose not to impose a harsher punishment on defendant, but rather to restructure the type of sentence she would receive." App. at 36-7. He then restructured her sentence from three years to twelve.

We hold that as a matter of law an increased sentence of twelve years is not a mere restructuring of the type of sentence. In view of the unique facts of this case, and the specific reasons given by the trial judge, we will vacate the November 16, 1982 sentence as reimposed on June 20, 1983 and will remand the matter for resentencing to a term not to exceed that originally imposed on December 22, 1980.

---

**8.** As Judge Aldisert noted in *United States v. Garcia*, 544 F.2d 681, 685 (3d Cir.1976) which involved an original sentencing proceeding:

> We recognize, and indeed emphasize that leniency, compassion, and special consideration cannot be expected from a sentencing court upon the entry of every guilty plea. The process is not automatic. Sentencing courts are afforded wide discretion in determining whether these factors should be invoked or withheld in marking the dimensions of a sentence.