**MARSHALL, Douglas W., Appellee,**

v.

**LANSING, Douglas T., Superintendent, Allenwood Prison Camp, Montgomery, Pa., United States Parole Commission, Webb, William H. Jr., Chief Probation Officer, District of Columbia, Kramer, Lon, U.S. Probation Officer, District of Columbia, Appellants.**

No. 86–5737.
United States Court of Appeals,
Third Circuit.

Argued May 20, 1987.

Filed Feb. 10, 1988.
Rehearing Denied April 8,
and Amended April 13, 1988.

Louise O. Knight (argued), Lewisburg, Pa., for appellee.

Henry J. Sadowski (argued), Regional Counsel, U.S. Parole Com'n, Philadelphia, Pa., James J. West, U.S. Atty., Timothy B. Haney, Asst. U.S. Atty., Harrisburg, Pa., for appellants.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by the United States Parole Commission from a grant of a writ

of habeas corpus to a federal prisoner whose parole release guidelines were found by the district court to have been improperly determined.[1] The district court granted the writ after two successive remands to the Commission—the first for further explanation of the Commission's decision, and the second for recategorization of the severity of petitioner's offense after the court found the further explanation inadequate. Although the Commission complied with the second remand order, the court nevertheless granted the writ because the court found the Commission's decisions to add six months to petitioner's term of incarceration for two disciplinary infractions and to deny parole until he had served the maximum permissible term under the Commission's guidelines to be arbitrary and irrational.

Because we find that the Commission failed entirely to provide any useful explanation at the administrative level for its initial decision to attribute more than one kilogram of cocaine to petitioner, even after specific directives from the district court, we affirm the district court's remand to the Commission ordering it to attribute less than one kilogram to petitioner. In so doing, we reject the Commission's arguments that a court cannot demand more than a bare, conclusory, statement of reasons from the Commission, and that the Commission's reasoning in this case was evident from the record.

We also find the Commission's delayed decision to penalize petitioner for his first disciplinary infraction to raise an inference of unconstitutional retaliation. The infraction was on his record, but ignored by the Commission at petitioner's initial parole hearing. The Commission did not decide to impose a penalty for this infraction, delaying petitioner's release by two months, until after the district court had ordered the Commission to assign petitioner an earlier

release date based on a more reasonable attribution of cocaine. Nevertheless, we reverse the order granting the writ, because we find the Commission's decisions to penalize petitioner for his second institutional infraction, and to assign petitioner the latest permissible release date under the guidelines, to have ample support in the record.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Douglas Marshall pleaded guilty on June 20, 1983, in the United States District Court for the District of Columbia to one count of conspiracy to distribute cocaine. While on bond pending sentencing, Marshall was rearrested for further involvement with cocaine, and pleaded guilty to one count of simple possession. He was subsequently sentenced to six years' imprisonment on the first count, and a 30–day prison term, to run consecutive to the first term, on the second count. Marshall was incarcerated at the Allenwood, Pennsylvania, Federal Prison Camp.

In October 1984, Marshall received his initial parole hearing, following which the Parole Commission determined that Marshall's offense involved more than one kilogram and less than five kilograms of pure cocaine, and thus assigned Marshall an offense severity rating of Category 6.[2] See U.S. Parole Commission Offense Behavior Severity Index 921(d), 28 C.F.R. § 2.20 (1985) [hereinafter Offense Severity Index]. The Commission also assessed Marshall to be a "very good" parole risk, giving him a salient factor score of 9, see 28 C.F.R. § 2.20 (1987) (Salient Factor Scoring Manual). Given these ratings, the Commission's guidelines called for granting parole after 40–52 months of imprisonment. 28 C.F.R. § 2.20 (1987) ("Guidelines

---

1. Respondents William Webb and Lon Kramer were dismissed by order of the district court, and are not parties to this appeal. Respondent Douglas Lansing, as the Superintendent of Allenwood Federal Prison Camp, is a nominal appellant.

2. Although the indictments themselves did not specifically charge Marshall with such substantial involvement, the Commission is permitted to base its determination on total offense behavior. See U.S. Parole Commission Offense Behavior Severity Index 921, 28 C.F.R. § 2.20 (1987).

for Decisionmaking" table). The Commission decided to continue Marshall's imprisonment to the expiration of his term, which the Commission stated to be approximately forty-eight months.[3]

The Commission's determination that Marshall's offense involved more than one kilogram of cocaine was based on a series of inferences drawn from facts set forth primarily in the presentence investigation report and transcripts of Marshall's sentencing proceedings. The inferential reasoning process was never spelled out by the Commission itself in any available Commission documents. It was, however, fully explained by the Commission's counsel in appellee's briefs to the district court and to this court. The Commission's Notice of Action, informing Marshall of his parole status, contained a statement of reasons, pursuant to 18 U.S.C. § 4206(b) (1982); *see also* 28 C.F.R. §§ 2.13(c), 2.24 (1987), but the statement consisted only of a conclusory determination, revealing no chain of reasoning. In its entirety, it read:

> Your offense behavior has been rated as Category Six severity because it involved a non-peripheral role in a conspiracy to distribute between one and five kilograms of pure cocaine. Your salient factor score (SFS-81) is 9. You have been in federal custody a total of 14 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 40-52 months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted. As required by law, you have also been scheduled for a statutory interim hearing during April, 1986.

J.A. 42.

After exhausting his administrative appeals, Marshall filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania in June 1985, claiming that the Commission had no basis upon which to make its determination that he had been involved with more than one kilogram of cocaine; that in fact the available evidence indicated that he had been involved with significantly less than one kilo; and that he therefore should have been assigned an offense severity rating of Category 5 (100 grams to one kilogram of pure cocaine). Such a reduction in offense severity would be significant because the parole guidelines call for release of a Category 5 prisoner with Marshall's salient factor score after 24 to 36 months. *See* 28 C.F.R. § 2.20 (1987) ("Guidelines for Decisionmaking" table).

The record was reviewed by a United States Magistrate, who found no rational basis to support the Commission's finding of more than one kilo. The district court adopted the magistrate's report and thereupon remanded the case so that the Commission could reexamine Marshall's parole status with the instruction that if the Commission still determined that Marshall should be assigned to Category 6, it should clearly explain its reasoning. The court ordered, *inter alia,*

4. If, in its reconsideration of Marshall's offense categorization pursuant to 28 C.F.R. § 2.20 *et seq.* the Commission determines that Marshall was in possession of one kilogram or more of cocaine rather than more than 100 grams but less than a kilogram of cocaine the Commission shall indicate:

4.1 The statements, evidence, affidavits, or other facts upon which it relies in reaching its decision;

4.2 The rationale for its decision and its evaluation of all evidence relevant to the decision;

4.3 Specific reasons for rejecting evidence that would tend to support Marshall's position; and,

4.4 Findings of fact on each fact relevant to the Commission's conclusion regarding Marshall's position.

---

**3.** The basis for this calculation is not entirely clear. We presume that it derives from either the calculation of good time and camp good time, *see* 18 U.S.C. §§ 4161–66 (1982), or the presumptive parole date, *see* 18 U.S.C. § 4206(d) (1982).

J.A. 110. The court explained its own reasoning in its denial of the Commission's motion to reconsider; the remand was justified "because the record which came before us did not permit us to determine whether the United States Parole Commission could articulate '... a rational connection between the facts found and the choice made.' *Bowman Transportation, Inc. v. Arkansas–Best Freight Systems, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 [285] (1974)." J.A. 115.

Pursuant to the court's remand, the Commission reconsidered Marshall's case and, after a new hearing in March, 1986, reaffirmed its prior finding that Marshall had been involved with more than one kilo. Notwithstanding the court's order, the Commission did not point to any specific pieces of evidence, nor did it explain how the record evidence would lead to the greater-than-one-kilo conclusion. Instead, the Commission included the following in its Notice of Action: [4]

This statement of reasons has been prepared to comply with a court order. Evidence relied upon in evaluating offense severity:

1. Information contained in Pre Sentence Investigation and transcripts of recorded conversation of August 26, 1983.
2. DEA interview of unindicted co-conspirator Devon Dupres dated August 13, 1982.
3. DEA interview of codefendant Robert Finkel dated June 21, 1982.

In addition, the Commission makes the following findings of fact:

1. Dupres had every reason to be aware the true extent of the overall cocaine conspiracy as well as the particular dealing of Douglas Marshal and Troy Todd inasmuch as she served as the live-in girlfriend of both conspirators during different times in the conspiracy.
2. Marshal admitted throughout the new initial hearing that the statements of Dupres and Finkel had elements of truth in them as to names, dates, etc. Subject primarily disputed the quantities and frequency of the drug transactions

mentioned therein. The Commission finds Marshal's representations to be a little more than self-serving rationalizations.

3. Marshal and Todd were close friends from the fall of 1979 through the date of their arrest and lived together for a substantial period of that timeframe. The Commission finds this relationship inextricably links Marshal with the drug trafficking activities of Todd as well as his own. While Marshal worked for Todd, he was a heavy drug trafficker in his own right and was totally and continuously involved in drug trafficking for the life of the conspiracy.

4. Finkel's statement that Todd showed him one kilogram of cocaine on April 18, 1982 at Michael Stern's apartment belies Marshal's representation that he and Todd only kept extremely small quantities of cocaine at Stern's apartment.

5. The purported refuted testimony of Dupres should not be given serious consideration because it is unsigned, dated and elicited under questionable circumstances.

6. Marshal's claim that he disassociated himself from cocaine sales in mid–1981 is at odds with his April 18, 1982 cocaine trafficking activities. Also, Marshal's claim that he dealt only in extremely small sales of cocaine is also contradicted by the eight ounce sale conducted on that date.

7. The August 26, 1983 transcript confirms many of the co-offenders' statements relative to the scale and extent of Marshal's drug activities. Specifically, on page 13, Marshal concedes that investigators had found an individual who he used to sell one-quarter pound quantities of cocaine to.

J.A. 121.

Additionally, the Commission noted that Marshall had been found guilty of two institutional disciplinary infractions—routine drug tests had twice detected THC in Marshall's urine, demonstrating marijuana usage while in prison. The first infraction

---

**4.** The Commission's typographical errors have been retained.

was on Marshall's record at the time of his first parole hearing in October, 1984, although no penalty was assessed at that time; the second was not discovered until February, 1985. The Commission's "Rescission guidelines" allowed the addition of zero to six months to Marshall's term of incarceration for these infractions; zero to two months for the first infraction, pursuant to guidelines in effect at the time of the initial hearing, and zero to four months for the second infraction, pursuant to new guidelines in effect at the time of the second hearing. *See* 28 C.F.R. § 2.36(a)(1) (1984) (maximum penalty of two months for "drug/alcohol abuse"); 28 C.F.R. § 2.36(a)(1) (1986) (maximum of four months for "use or simple possession of illicit drugs").[5] Adding 0–6 months to Marshall's Category 6 guidelines, the Commission found that he should not be granted parole until he had served 40–58 months.[6] The Commission then denied Marshall parole before expiration of his sentence (approximately 48 months).

The district court again reviewed the Commission's determination, and again determined that the Commission had failed adequately to explain its conclusion that Marshall had been involved with more than one kilo. Finding no rational basis apparent for the Commission's decision, even after specific direction from the court to supply such a basis, the court ordered the Commission to reassess Marshall's parole status under an offense severity of Category 5—100 grams to one kilogram of pure cocaine. The district court did not address the disciplinary penalties in its order.

The Commission, in compliance with the order, reconsidered Marshall's case. Attributing to him less than one kilo of cocaine, it changed his offense severity rating to Category 5. Commission guidelines therefore called for release after twenty-four to thirty-six months of incarceration. 28 C.F.R. § 2.20. By adding a 0–6 month penalty for Marshall's institutional infraction, the Commission computed his guidelines at 24–42 months, and decided not to grant him parole until he had served forty-two months. The Commission provided no explanation for its decision to assign Marshall to the top of his guideline range.

Marshall again renewed his petition with the district court, contending that there was no rational basis for the Commission's dual decisions to place Marshall at the top of his guideline range and to punish him with an additional six months in prison for his institutional infractions. After further review by the magistrate, the court agreed, finding these decisions to be arbitrary and capricious.

In light of the protracted history of the case and the court's impression that the Commission would continue to evade the court's mandate, the court declined to remand for further explanation. Instead, the court determined that the Commission was unjustified in penalizing Marshall for his marijuana usage, because the first infraction was on Marshall's record at the time of

---

**5.** In its Notice of Action dated March 12, 1986, the Commission actually assessed a four-month penalty for *each* infraction. It was not until July 30, 1986, after further judicial proceedings, another remand on grounds discussed *infra,* and another incorrect Notice of Action, that the Commission discovered its error, and issued a corrected parole decision, reflecting the fact that the harsher penalty was not in effect at the time of the initial infraction.

We note with some concern the frequency with which such errors by the Commission appear in the record of this protracted case. For example, in its initial assessment of Marshall's parole status, the Commission's hearing examiners miscalculated Marshall's presumptive release date. *See* J.A. 41. The Commission corrected the error before a formal Notice of Action was issued in October, 1984. *See* J.A. 42,

65. Moreover, even in the very Notice of Action used to announce its July, 1986 correction, the Commission continued to refer to Marshall's parole guideline range as though it had been calculated under the incorrect disciplinary penalty. We trust that such errors are more infrequent than this isolated record reveals, and that such errors, when they occur, are as likely to be corrected when a prisoner is unrepresented as when he is assisted by able counsel as in this case.

**6.** Because of the Commission's misapplication of the disciplinary guidelines, discussed *supra* n. 5, the Commission actually assessed Marshall's guidelines at 40–60 months. Because the Commission ultimately corrected its own error, *id.,* this opinion, to avoid confusion, refers to the correct guidelines.

his first parole hearing, but was not considered in assessing his parole status at that time. The court held that the Commission's action in resurrecting a previously ignored violation was arbitrary, and therefore that it could not be considered in subsequent parole determinations. The court did not, however, distinguish between the first and second infractions.

Moreover, since the Commission provided no explanation for its placement of Marshall at the top of the guideline range, the court concluded that there was no rational basis for holding Marshall beyond the midpoint of the 24–36 month range, i.e., thirty months. Since Marshall had already served thirty months of his term by August 1, 1986, the district court concluded that it would be arbitrary and capricious to keep Marshall in confinement any longer. On August 12, 1986, the court granted the writ of habeas corpus, and ordered Marshall's immediate release. This appeal followed.

## II. APPEALABILITY

On this appeal, the Commission essentially challenges all three orders of the district court. Before we reach these challenges, however, we must first note a potential jurisdictional problem.[7] The Commission did not appeal from either of the first two orders. It instead complied with those orders and did not appeal until the district court finally granted the writ and ordered Marshall's release. Thus the question arises as to whether the Commission, by failing to appeal the first two orders, waived its right to challenge the substance of those orders on this appeal.

The appealability *vel non* of the first order presents an easy question. The district court's order requiring an official explanation of the Category 6 determination constituted a remand to an administrative agency which clearly contemplated further litigation, *viz.*, a review by the district court of the Commission's explanation. Under our jurisprudence, such a remand is not a final order, and is thus not appealable. *See United Steelworkers of America v. Union R.R. Co.*, 648 F.2d 905, 909 (3d Cir.1981); *Marshall v. Celebrezze*, 351 F.2d 467 (3d Cir.1965); *see also Bachowski v. Usery*, 545 F.2d 363 (3d Cir.1976). Plainly, a right to appeal cannot be waived if no appeal could have been taken in the first instance.

The Commission's challenge to the second order is more problematic. If the district court's remand ordering the Commission to attribute less than one kilo to Marshall was similarly unappealable at the time, then the appeal of the order was not waived, and the order can be challenged on this appeal. However, it is not at all clear whether the court's second remand was a final order, appealable under 28 U.S.C. § 1291. *See AJA Assocs. v. Army Corps of Engineers*, 817 F.2d 1070, 1072–73 (3d Cir.1987) (a remand to an administrative agency that finally resolves an important legal issue and that cannot receive later appellate review is a final order).

If the order was final, it would seem that the Commission lost the right to challenge it by failing to appeal within sixty days.[8] *See* Fed.R.App.P. 4(a). We note, however, a compelling line of cases that holds that, in habeas corpus proceedings, the district

---

7. Although not raised by either party, we have a responsibility to address our own jurisdiction, *sua sponte*. *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed. 2d 435 (1976); *Elsinore Shore Associates v. Local 54*, 820 F.2d 62, 66 (3d Cir.1987).

8. The Commission, in its Notice of Action recategorizing Marshall's offense severity to Category 5, purported to "reserve[ ] the right to void this decision if the District Court order is vacated or reversed on appeal." J.A. 217. We believe, however, that this reservation can only be given effect if in fact the district court's order

remains appealable. Thus this situation is distinguishable from the facts of *Campbell v. U.S. Parole Commission*, 704 F.2d 106, 108–09 (3d Cir.1983), where this court gave effect to such a reservation of rights because the Commission had immediately sought appellate review of the district court's order to reassess petitioner's parole status, and the Commission complied with the order while awaiting this court's decision. *See also U.S. ex rel. Forman v. McCall*, 709 F.2d 852, 855 & n. 7 (3d Cir.1983) (same), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986).

court has not finally disposed of a case until it either grants or denies the writ. *See, e.g., Allen v. Hadden,* 738 F.2d 1102, 1106 (10th Cir.1984); *Heirens v. Mizell,* 729 F.2d 449, 454–55 (7th Cir.), *cert. denied,* 469 U.S. 842, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984); *cf. United States ex rel. Fielding v. Degnan,* 587 F.2d 619, 621–22 (3d Cir.1978) (procedural order of district court that contemplated further hearings on the merits of prisoner's habeas petition before prisoner could be released from custody is not a final, appealable order). Until such a final disposition, the litigation is still considered pending, and all interim orders are not appealable. *See, e.g., Allen,* 738 F.2d at 1106. Although many of these cases may well be distinguishable, it is apparent that the district court's second order could legitimately be viewed in either of two ways: (1) as an order finally disposing of the question of how much cocaine could fairly be attributable to Marshall, and thus dispensing with the need for any further judicial proceedings on the issue of Marshall's offense severity rating;[9] or (2) as an *interim* order in a proceeding intended to resolve one overarching issue, whether or not to grant Marshall a writ of habeas corpus.

Generally, failure to appeal from a final appealable order constitutes a waiver of a right to appellate review of that order. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 479–80 n. 5, 100 S.Ct. 745, 750 n. 5, 62 L.Ed.2d 676 (1980); *Citibank, N.A. v. Data Lease Fin. Corp.,* 645 F.2d 333, 337 (5th Cir. Unit B 1981). However, it would be inappropriate to find waiver in this case because the finality of the order was not clearly established at the time of the order, and the Commission may reasonably have believed at that time that it was not appealable. We therefore will review the merits of the district court's several orders in this case.

## III. THE DISTRICT COURT'S FIRST ORDER

The Parole Commission presents two challenges to the district court's first order remanding the case for a fuller explanation of the Commission's reasoning. First, the Commission challenges the court's authority to demand *any* explanation beyond the bare statement of reasons supplied in its first Notice of Action.[10] Alternatively, the Commission contends that, even if the district court had authority to demand a fuller explanation, such an explanation was not called for in this case, because the reasons supporting the Category 6 rating could be found in the administrative record which was before the court.

### A.

■ We reject the Commission's first argument for two reasons, one based on the statutory requirement of an official explanation of decisions, and the other based on the Commission's due process obligation to follow its own regulations.

The Commission recognizes that it is required, under 18 U.S.C. § 4206(b) (1982), to "state with particularity the reasons" for a denial of parole.[11] The Commission con-

---

9. We note in this regard that the order seems to comply with the first *AJA Associates* requirement that the order finally resolve "an important legal issue." 817 F.2d at 1073. We deem the question of the court's authority (and the scope of that authority) to interfere with the Parole Commission's broad discretion to rate offense severity to be an "important legal issue." The second *AJA Associates* requirement, however, presents an exceedingly difficult problem in the instant case. A remand to an administrative agency can only be appealed if denial of review would effectively foreclose future appellate review "as a practical matter." *Id.* At the time of the district court's second remand, it probably seemed as if this requirement had been met, as it is only because of an unusual concatenation of circumstances, namely the placement of Marshall at the top of his guidelines, his challenge to that placement, and the district court's grant of the petition, that the question is now before us for possible review. However, because of the potentially circular reasoning required to resolve this dilemma, and because of the way we ultimately resolve this case, we decline to determine whether the second *AJA* requirement was met.

10. The first Notice of Action is rescribed in its entirety, *supra,* p. 937.

11. Section 4206, along with the rest of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–18 (1985), was repealed with respect to offenses committed after November 1,

tends, however, that its obligations are satisfied by a Notice of Action containing no more than "the conclusion which the agency has reached and ... a brief summary of facts upon which that conclusion is based." Appellant's Brief at 35. The Commission relies upon *Hill v. Attorney General,* 550 F.2d 901 (3d Cir.1977), *Shahid v. Crawford,* 599 F.2d 666, 670–72 (5th Cir.1979), and *Garcia v. United States Board of Parole,* 557 F.2d 100, 105 (7th Cir.1977), each of which held statements of reasons substantially similar to the one at issue here to provide sufficient explanation.

We assume, without deciding, that a brief, even superficial, statement of reasons is sufficient to satisfy § 4206(b) in the ordinary case.[12] The legislative history makes clear that "[a] formal judicial factfinding is not required, but the inmate must receive an understandable explanation of his parole status." S.Rep. No. 369, 94th Cong., 2d Sess. 25 (1975), *reprinted in* 1976 U.S.Code Cong. & Admin.News 335, 346 [*hereinafter* Senate Report]. The Commission, upon a decision to deny parole, need only provide "a statement containing [the prisoner's] severity of offense rating, the calculation of his salient factors [sic] score and an explanation of how such a determination utilizing the guidelines was reached." *Id.*

This, however, is not the ordinary case. The Commission's conclusion that Marshall was "involved with" more than one kilogram of cocaine is not readily apparent from the indictment, the facts surrounding his arrest, or the presentence investigation report. The magistrate found, and the Commission does not contest, that prior to his arrest Marshall sold to an undercover agent eight ounces of 54.4 percent pure cocaine (or 122.6 grams of pure cocaine[13]),

agreed to sell an additional pound (approximately 455 grams) of unknown purity at a later date, and had in his possession the equivalent of 29.26 grams of pure cocaine at the time of his arrest. Recorded conversations leading to Marshall's rearrest while on bond revealed a willingness to sell yet another pound of cocaine. Finally, the presentence report contains an allegation that Marshall sold another 8.39 grams of pure cocaine to an informant. Assuming a separate existence for the additional pounds, and assuming a similar purity of 54.4 percent, this information reveals, without too much hypothesizing or speculation, slightly more than 650 grams of pure cocaine conceivably attributable to Marshall. However, without further inferential reasoning from allegations in the presentence report, reasoning which may be appropriate if explained but is not readily apparent, it is impossible to glean how the Parole Commission attributed more than 1,000 grams (or one kilo) to Marshall.

Where reasoning beyond simple arithmetic or obvious inferences is required to draw the conclusions upon which the Commission relies, we see no reason why the formal statement of reasons should not provide the crucial missing logic. Congress has required the Commission to furnish a statement of reasons to the prisoner so that he can receive "an understandable explanation of his parole status." Senate Report, *supra* p. 942, at 25, 1976 U.S.Code Cong. & Admin.News at 346. In this case, a reasonably intelligent person who was familiar with the relevant facts of the case and who had read the Commission's perfunctory explanation would still not have understood how the Commission reached its conclusion. We do not find it either overly intrusive or contrary to the statute

---

1986, by Pub.L. No. 98–473, Title II, §§ 218(a)(5), 235, 98 Stat. 2027, 2031 (Oct. 12, 1984). The repealed law, as both parties agree, is applicable here. *See* Sentencing Act of 1987, P.L. 100–182, § 2 (clarifying effective date).

**12.** In approving a similar statement of reasons in *Hill,* this court merely held that the reasons were sufficient to satisfy due process. 550 F.2d at 902. The statutory requirement of a statement of reasons, § 4206(b), was not yet in effect

at the time the Commission issued its explanation in that case. *See* Pub.L. No. 94–233, § 16(b).

**13.** Commission regulations explain that "equivalent amounts" of cocaine "may be computed as follows: 1 gram of 100% pure is equivalent to 2 grams of 50% pure and 10 grams of 10% pure, etc." Offense Severity Index, 28 C.F.R. § 2.20 (Notes to Chapter Nine).

to require the Commission, which is under a statutory mandate to "state with particularity the reasons for [parole] denial," to truly provide reasons. We believe that a statement of reasons must reveal *reasoning,* and not simply present conclusions, at least where that reasoning is not apparent from the facts of the case.

■ This court has already observed that the due process requirements of non-arbitrary treatment could justify a district court remand for a "fuller showing of the factual bases underlying the reasons given" in a formal parole decision. *Zannino v. Arnold,* 531 F.2d 687, 692 (3d Cir.1976). We need not decide whether the Constitution itself requires a fuller statement of reasons than the Commission provided here, because we read the statute to create such a requirement. We do note, however, that principles of due process require an agency to follow its own regulations, which have the force of law. *See United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039 (1974); *Frisby v. United States Department of Housing & Urban Development,* 755 F.2d 1052, 1055–56 (3d Cir.1985); *D'Iorio v. County of Delaware,* 592 F.2d 681, 685 n. 2 (3d Cir.1978); *Bluth v. Laird,* 435 F.2d 1065, 1071 (4th Cir.1970).

■ The Commission's own regulations call for the rating of a cocaine offender's offense severity as Category 6 if and only if his offense involved more than one kilogram of pure cocaine. Offense Severity Index 921(d), 28 C.F.R. § 2.20. A court can set aside agency action that fails to comply with the agency's own regulations, at least where the regulations are designed to protect the individual grievant. *See, e.g., D'Iorio,* 592 F.2d at 685 n. 2; *Bluth,* 435 F.2d at 1071. The district court, however, in its initial remand, did not go so far as to set aside the Commission's action. It did not take issue with the substance of the Commission's decision, nor did it declare the Commission's reasoning to be arbitrary, irrational, or in violation of the regulations. Rather, the court merely remanded for an explanation of the agency's reasoning, so that the court could determine whether that reasoning was rational. We affirm this remand, both because the statute requires a meaningful statement of reasons which Marshall had not then received, and because a prisoner has a right to insure that he is being held in compliance with agency regulations, which have the force of law. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (writ of habeas corpus will issue where federal agency fails to comply with its own regulations).

## B.

■ The Commission argues, in the alternative, that no further explanation was needed in this case because its reasoning could readily be deduced from the administrative record. The Commission points to much evidence in the presentence report, and in affidavits and recordings of informants, which purportedly supports its determination. The Commission attempts to explain, at length, how this evidence demonstrates that Marshall was involved with more than one kilo.

We decline to review the record for this evidence, and we affirm the district court's refusal to do so, as well. The statute requires that *"[t]he Commission* shall furnish the eligible prisoner with a *written notice* of its determination not later than *twenty-one days,* excluding holidays, after the date of the parole determination proceeding. If parole is denied such notice shall state with particularity the reasons for such denial." 18 U.S.C. § 4206(b) (emphasis added). The statute does not authorize the Commission to develop its reasoning in proceedings before the district court, let alone the court of appeals. The reasons must be furnished *in writing, to the prisoner,* within twenty-one days of the parole hearing.

■ Moreover, when reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. A court must review the agency's actual on-the-record reasoning process. Only a formal statement of reasons from the agency

can provide this explanation, not a *post hoc* rationalization, or agency counsel's in-court reasoning. *See Motor Vehicle Mfrs. Assoc v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983). The agency must set forth the basis for its decision "with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–78, 91 L.Ed. 1995 (1947). *See SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); *Moret v. Karn*, 746 F.2d 989, 992 (3d Cir.1984).

It is true that this court has, on occasion, searched the record itself to find support for a Parole Commission decision. *See, e.g., Campbell v. United States Parole Commission*, 704 F.2d 106, 110 (3d Cir. 1983); *Zannino v. Arnold*, 531 F.2d 687, 689 (3d Cir.1976).[14] However, in the above-cited cases, the Commission's conclusions were much more readily apparent; broad inferential leaps of logic were not needed to reach the determinations. Moreover, the challenged decisions were based on characterizations by the Commission—in *Campbell*, whether the shooting of a cab driver during a robbery could be considered an "aggravating factor," 704 F.2d at 108; in *Zannino*, whether an "unusually sophisticated or professional manner was evident in planning or commission of the offense," 531 F.2d at 689. The *Campbell* and *Zannino* courts were searching for *evidence* to support these characterizations. Evidence is much more easily located in a cold record than the *reasoning* that must be provided

to support the Commission's drug calculations in the instant case.

Therefore, we will affirm the district court's first remand, ordering the Parole Commission to provide a formal statement of reasons that adequately explains the decision to attribute to Marshall more than one kilogram of cocaine.

## IV. THE DISTRICT COURT'S SECOND ORDER

■ Affirmance of the district court's second remand order, which required the Commission to recategorize Marshall's offense severity because of the Commission's continuing failure to explain its decision, flows naturally from the reasoning above.

The parties argued in their briefs and at oral argument over the appropriate scope of review of a Parole Commission decision. We need not decide, however, whether a reviewing court should apply an arbitrary and capricious standard, *Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir.1976), a rational basis test, *id.*, a "some evidence" standard, *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), or some other scope of review when examining a Commission explanation, because we agree with the district court that the Commission failed to provide *any* explanation for its decision.[15]

The Commission provided, in response to the district court's first remand, a new Notice of Action containing seven "findings of fact." This purported explanation was facially more extensive than the initial statement of reasons, but was actually nothing more than a series of conclusory statements.[16] This new "statement of reasons" did not provide the crucial missing *reasoning* needed to support the attribution of more than one kilo to Marshall. For

---

**14.** We note, however, that the *Zannino* panel rendered its decision prior to the promulgation of a statutory requirement of a statement of reasons. *See* Pub.L. No. 94–233, § 16(b), 90 Stat. 233 (Mar. 15, 1976). The requirement of an explanation in *Zannino* was based on due process, 531 F.2d at 690, which might explain the court's willingness to examine the record more closely. Moreover, although the court did examine the record, it noted that the district court would not have abused its discretion had

it remanded for a fuller explanation from the Commission. *Id.* at 692.

**15.** *Hill*, although a Supreme Court case, is not clearly dispositive because it involved review of a prison disciplinary board's decision, a factor that might well make that case distinguishable.

**16.** The "findings of fact" are presented in their entirety, *supra*, p. 938.

example, the Notice of Action does not provide a single mathematical calculation to show how Marshall's series of involvements with cocaine add up to one kilogram. In fact, only one specific quantity of cocaine is mentioned throughout the entire statement—the Commission's final finding that Marshall "used to sell one-quarter pound quantities of cocaine" to a particular individual. It is impossible to discern how the Commission concluded that Marshall was involved with more than one kilogram from this series of statements, which do little more than credit and discredit certain pieces of testimony.

As the Supreme Court has made clear, "[t]he agency must articulate a 'rational connection between the facts found and the choice made.'" *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (citation omitted). Yet even after a specific judicial command to articulate such a connection, the Commission failed to comply; it merely pointed to a series of facts found, without explaining how they lead to the case-dispositive conclusion. "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 285–86, 95 S.Ct. at 442–43 (citations omitted). The Commission's path of reasoning in this case, however, could

not "reasonably be discerned," and therefore the district court was under no obligation to uphold the decision. *See Moret v. Karn*, 746 F.2d 989 (3d Cir.1984) (writ of habeas corpus will issue where immigration agency fails to provide a reasoned basis for its decision to revoke parole).

■ When a court has already remanded a case to an administrative agency for failure to explain adequately its decision, and the agency, on remand, again fails to provide a reasoned basis for its conclusions, a reviewing court can set aside the agency's decision so that it comports with a more readily apparent conclusion. *See Greyhound Corp. v. ICC*, 668 F.2d 1354, 1358–61 (D.C.Cir.1981). The Parole Commission failed to provide a reasoned explanation for its decision, as required by statute, even after the district court gave the Commission a second opportunity to do so. We cannot say that the district court abused its discretion by requiring the Commission to assess Marshall's parole status under a more readily supportable factual predicate (here, the attribution of less than one kilo), when the Commission has proven to be unable or unwilling to explain formally its own assumptions.[17]

## V. THE DISTRICT COURT'S THIRD ORDER

The district court in its third order granted the writ of habeas corpus because it

---

**17.** The Parole Commission argues that the district court's scope of review in this case was so narrow that it was limited to searching for "some evidence" in the record to support the Commission's decision. *See Hill*, 472 U.S. at 454, 105 S.Ct. at 2773 (1985) (due process requires that the findings of a prison disciplinary board must be supported by "some evidence in the record"). We have already explained why, regardless of the scope of review, the district court did not abuse its discretion in demanding a fuller statement of reasons, and then ordering the Commission to recategorize Marshall's offense for lack of any reasoned explanation. It is noteworthy, however, that the Commission, in arguing for a deferential scope of review, apparently concedes that its decision concerning the proper category in which to place Marshall's offense is subject to *some* review.

This court has already held that "precluding any judicial inquiry into the adequacy of the evidence on which the conclusions embodied in the Board's statement of reasons for denying

parole were based would raise troublesome constitutional issues." *Zannino*, 531 F.2d at 690. *But see Wallace v. Christensen*, 802 F.2d 1539 (9th Cir.1986) (en banc) (court has jurisdiction to review claims that Parole Commission acted outside scope of its discretion, but not to review Commission's rating of offense severity for abuse of discretion); *Roberts v. Corrothers*, 812 F.2d 1173, 1180–81 (9th Cir.1987) (possibly narrowing the limitations on review imposed by *Wallace*). We have never demonstrated reluctance to review Commission decisions. *See, e.g., Campbell v. United States Parole Commission*, 704 F.2d 106, 110 (3d Cir.1983) (parole decision subject to "rational basis" review). Additionally, we note that the substance of the Commission's decision in the case *sub judice* was never actually subjected to any judicial review; we affirm the district court's order to recategorize Marshall's offense on the basis of the Commission's failure, in violation of 18 U.S.C. § 4206(b), to provide reasons for its decision.

found that continued incarceration beyond thirty months imprisonment was arbitrary and capricious. In essence, the district court rejected two separate decisions by the Commission: 1) the decision to add six months to Marshall's guidelines because of his two disciplinary infractions; and 2) the decision to place Marshall at the top of his guideline range (24–42 months) and therefore not to grant him parole until he had served 42 months.

The Commission challenges this order as an unwarranted invasion into an area in which it has absolute and unreviewable discretion. We will address this contention in relation to each of the two Commission decisions rejected by the district court.

### A.

The Commission argues that once a prisoner has been found guilty of an institutional disciplinary infraction, the Commission is free to assess as much of a penalty as it sees fit, provided it is within the "Rescission guidelines." *See* 18 U.S.C. § 4206(a); 28 C.F.R. § 2.36. These guidelines "apply to the sanctioning of disciplinary infractions or new criminal behavior committed by a prisoner subsequent to the commencement of his sentence and prior to his release on parole. These guidelines specify the customary time to be served for such behavior which shall be added to the time required by the original presumptive or effective date." 28 C.F.R. § 2.36(a). Moreover, the Commission notes that there is no statutory requirement of a statement of reasons explaining why a particular penalty was assessed. *Cf.* 18 U.S.C. § 4206(b) (Commission must "state with particularity the reasons" for denial of parole); § 4206(c) (Commission must state "with particularity the reasons for [a decision outside the guidelines], including a summa-

ry of the information relied upon"). The Commission argues that its final Notice of Action in this case, which explained that the extra six months were added because of two disciplinary infractions, provides all the explanation that is required.[18]

Marshall, however, points to the glaring fact that his first marijuana infraction was on his record at the time of his initial parole hearing, yet it was apparently ignored by the Commission in assessing his initial guidelines. The disciplinary penalty was not added to his guideline score until after he had sought relief in the district court and the court had ordered the Commission to state its reasons for denying Marshall parole. Marshall contends that such action by the Commission is both arbitrary and retaliatory.

The Commission is correct (as is the dissent) that there are no statutory or regulatory standards by which to measure and review this Commission decision (beyond ensuring there was "some evidence" in the record to support the guilty finding on the charged infractions, *see Superintendent v. Hill*, 472 U.S. at 454, 105 S.Ct. at 2773, a fact that Marshall does not challenge). However that does not end the inquiry, for we also must review the decision to be certain it comports with due process. *See Local 2855 v. United States*, 602 F.2d 574, 580 (3d Cir.1979) ("Even when a court ascertains that a matter has been committed to agency discretion by law, it may entertain charges that the agency lacked jurisdiction, that the agency's decision was occasioned by impermissible influences, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command.") (footnote omitted). For the reasons that follow, we hold that the decision to assess a six

---

**18.** The final Notice of Action, after assessing Marshall's guidelines under an offense severity rating of Category 5 pursuant to the district court's second remand, stated, in relevant part:

In addition, you have committed rescission behavior classified as administrative. Present guidelines established by the Commission indicate a range of up to 120 days per disciplinary infraction. You have committed two infractions. One of which is subject to the

current guideline of 0–120 days, the other is subject to the previous sanction of 0–60 days. These sanctions added to the above guideline range results in an aggregate guideline range of 24–44 months to be served. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted. J.A. 217.

month penalty for Marshall's disciplinary infractions was unsupportable, but that the district court went too far in setting aside the entire penalty rather than just the portion relating to the first infraction.

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court delineated the constraints imposed by due process on a judge's discretion to resentence a criminal defendant after a successful appeal by that defendant has forced the state to retry (and reconvict) him. In spite of the tremendous reluctance of the Court to interfere with the virtually unreviewable discretion belonging to a sentencing judge, *see Dorszynski v. United States,* 418 U.S. 424, 431, 440–41 & n. 14, 94 S.Ct. 3042, 3047, 3051–52 & n. 14, 41 L.Ed. 855 (1974); *Gore v. United States,* 357 U.S. 386, 393, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958), the Court nevertheless held that due process forbade the imposition of a tougher sentence than the defendant had received after his first trial, whenever the increased penalty was in retaliation for the successful appeal. *Pearce,* 395 U.S. at 723–25, 89 S.Ct. at 2079–80.

The Court held that the mere "threat inherent in the existence of such a punitive policy" would serve to chill appeals by other prisoners, *id.* at 724, 89 S.Ct. at 2080 (citation omitted), and therefore that "due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080 (footnotes omitted). To that end, recognizing the difficulty of proving the existence of a retaliatory motivation in any individual case, *see id.* at 725 n. 20, 89 S.Ct. at 2080 n. 20, the Court held that

> whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons

must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after the time of the original sentencing proceeding.*

*Id.* at 726, 89 S.Ct. at 2081 (emphasis added). Where such reasons do not affirmatively appear, a federal court may void the harsher sentence and grant habeas corpus relief. *Id.* Later cases have explained that the imposition of a harsher sentence upon reconviction creates a "presumption of vindictiveness" on the part of the sentencer, which can only be overcome by an on-the-record explanation. *Wasman v. United States,* 468 U.S. 559, 565, 104 S.Ct. 3217, 3221, 82 L.Ed.2d 424 (1984) (quoting *United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982)).

In order to ensure that defendants are not deterred from challenging their convictions either on appeal or by collateral attack, this court has held that the mere "appearance of vindictiveness" in a judge's resentencing decision can trigger the *Pearce* presumption of retaliation. *United States v. Carrasquillo,* 732 F.2d 1160, 1162 n. 3 (3d Cir.1984) (quoting *United States v. Alvarado–Sandoval,* 557 F.2d 645 (9th Cir. 1977) (other citations omitted)). No actual finding of retaliation by the sentencing judge is required. 732 F.2d at 1162 n. 3.

We believe that the logic of *Pearce* and its progeny applies with equal force to the facts of this case. Just as a sentencing judge might resent a challenge to an underlying conviction which he himself had overseen, so too might the Commission look unkindly upon a successful court challenge to its rating of a prisoner's offense severity, thus supplying a motive for retaliation. *See Chaffin v. Stynchcombe,* 412 U.S. 17, 27, 93 S.Ct. 1977, 1983, 36 L.Ed.2d 714 (1973).[19] In this case, the Parole Commis-

---

19. In *Chaffin,* the Supreme Court held that the *Pearce* presumption did not apply when a jury, rather than a judge, imposed sentence. This was because a jury is much less likely to have a retaliatory motive than a judge, because, *inter alia,*

the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication. Similarly, the jury is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he re-

948

sion did not choose to exercise its discretion to penalize Marshall for his marijuana usage until *after* he had successfully challenged the Commission's failure to explain its decision to attribute more than one kilo of cocaine to him. We note in this regard that Congress, in authorizing the making of parole decisions pursuant to administrative guidelines, recognized the danger that parole could be used in a discriminatory or arbitrary fashion, and therefore declared that "[i]t is essential ... that parole has both the fact and appearance of fairness to all. Nothing less is necessary for the maintenance of the integrity of our criminal justice institutions." Senate Report, *supra* 942 at 19, 1976 U.S.Code Cong. & Admin.News at 340.

We recognize that the Commission's expertise, and its closeness to the prison situation, entitles it to exercise broad discretion in its assessment of whether to impose a penalty for a disciplinary infraction. We note, however, that a sentencing judge historically has been given comparable discretion, for comparable reasons. *See, e.g., United States v. Bazzano,* 570 F.2d 1120, 1131 (3d Cir.1977) (Adams, J., concurring) (sentencing judges are traditionally given wide range of unreviewable discretion "by virtue of their knowledge of the circumstances of a criminal case," which puts them "in the best position to impose a penalty, taking into account the individual conditions of the defendant and the nature of his crime") (footnotes omitted), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed. 2d 757 (1978); Brewster, *Appellate Review*

*of Sentences,* 40 F.R.D. 79, 80, 84–86 (1965) (opportunity to observe and interview both defendant and those providing information about defendant allows judge to make informed credibility assessments); *id.* at 82, 86 (judgments informed by experience); Symposium, *Appellate Review of Sentences,* 32 F.R.D. 249, 297–98 (1962) (time to study and observe defendant enables judge to make subjective judgments about defendant's character, and about his likelihood of rehabilitation or recidivism) (remarks of Vincent L. Broderick). For the same reasons that the Supreme Court was willing to impose a constitutional overlay upon a sentencing judge's discretion, we impose a similar requirement on the Parole Commission in this case. *See Thompson v. Armontrout,* 808 F.2d 28 (8th Cir.1986) (applying *Pearce* to a state parole board's decision).

■ We therefore hold that the Commission's *unexplained* decision to add two months to Marshall's term of incarceration because of conduct that occurred *before* the time of the original sentencing proceeding, *cf. Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081, which it ignored until its parole release determination was judicially put into question, creates a sufficient appearance of vindictiveness to justify voiding the penalty.[20]

■ We do not, however, see any similar justification for voiding the second disciplinary penalty. The second marijuana infraction occurred after Marshall's initial

gards as meritless appeals. 412 U.S. at 27, 93 S.Ct. at 1983 (footnote omitted). We consider the interests and perspective of the Parole Commission to be much closer to those of the judge than of the jury. Moreover, where a prisoner's challenge could be viewed as an assault on the Commission's much-valued discretion, such a challenge could provide an additional motive for retaliation.

**20.** The caselaw is clear that the body imposing sanctions must explain its decision to impose an increased penalty contemporaneous with that decision; an appellate court is not required to remand to the judge, or to the agency, to seek a *post hoc* rationalization, nor are we required to speculate as to its reasons. As we explained in *Jacobs v. Redman,* 616 F.2d 1251 (3d Cir.), *cert.*

denied, 446 U.S. 944, 100 S.Ct. 2170, 64 L.Ed.2d 799 (1980),

*Pearce* requires a *sentencing judge* to articulate any reason upon which he relied in imposing an increased sentence.... [*Pearce* ] does not permit a defendant to be left to speculate as to the true reason for an increased sentence. Moreover, reviewing courts should not be required to divine the cause for the new sentence.

*Id.* at 1259 (emphasis added). *See also Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081 (where the reasons for an increased sentence do not "affirmatively appear," Court will vacate the sentence). The Commission did not "affirmatively" provide such a reason at the time of the increased penalty; we need not seek or develop our own potential explanations.

parole hearing, and therefore was an appropriate factor for the Commission to consider when reassessing his parole guidelines. We see nothing arbitrary about a decision not to impose any punishment for a first infraction, but then to impose the maximum penalty of four months, *see* 28 C.F.R. § 2.36(a)(1) (1986), for a second infraction.

## B.

The Commission also challenges the district court's holding that the decision to place Marshall at the top of his guideline range was arbitrary and capricious. The Commission argues that once it has chosen an appropriate guideline range for an offender, its choice of where on the guidelines to place the offender is purely discretionary, and therefore not subject to review.

■ Neither Marshall nor the district court cites a single case standing for the proposition that the Commission can be forced to explain a decision that falls within the guidelines. Marshall instead presents two alternative arguments, adopted from the district court's final opinion. First, he argues that the decision to confine him for the maximum allowable period was simply irrational, and cannot be supported given the history of this case. Alternatively, Marshall argues that the decision to deny him parole until after forty-two months imprisonment was a decision outside the guidelines, and therefore "good cause" must be shown. *See* 18 U.S.C. § 4206(c). We reject each of these arguments.[21]

Marshall's "irrationality" argument plainly has no basis in the facts of this case. "By its very nature, parole is a very imprecise process. It requires subjective judgments. It requires predictions about human behavior when the instruments of prediction have not been perfected, and may never be perfected." Senate Report, *supra* p. 942 at 18–19, 1976 U.S.Code Cong. & Admin.News at 339–41. We think this is the kind of process that is uniquely suited to administrative discretion. Moreover, and consistent with the Senate Report, we conclude that Congress viewed the determination of where on the guidelines to place an individual prisoner— in essence, the determination of when exactly to grant parole —to be a determination appropriate for the Commission's sole discretion. *See* H.Conf. Rep. No. 838, 94th Cong., 2d Sess. 21, 22, 25, *reprinted in* 1976 U.S.Code Cong. & Admin.News 351 [hereinafter Conference Report].

■ Unlike the question of which guidelines are appropriate for a particular prisoner, a question controlled by the Commission's own regulations on rating offense severity, *see supra* Part III. A.; *see also* 28 C.F.R. § 2.20, there are no regulations controlling the decision of where on the guidelines to place an individual. The decision is one of pure administrative discretion, to be guided only by the overarching statutory standard of § 4206(a):

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare;
>
> subject to the provisions of subsections (b) [pertaining to written notice of decisions] and (c) [pertaining to decisions outside the guidelines] of this section, and

---

**21.** We also reject Marshall's suggestion, adopted from the magistrate's report, that because the Commission could not reasonably attribute to him more than about 650 grams of pure cocaine, roughly the midpoint of the Category 5 range of 100 to 1000 grams, the Commission could not reasonably place him beyond the midpoint of the parole guideline range of 24–36 months. Besides having no basis in the statute or regulations, such a limit on the Commission's discretion would ignore the numerous other objective and subjective factors that necessarily go into a parole decision. *See generally* Senate Report, *supra* p. 942, at 18–19, 1976 U.S.Code Cong. & Admin.News at 339–41.

pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

The role of the court, in reviewing a within-guidelines parole decision, is therefore essentially limited to insuring that the guidelines were in fact followed, once the Commission has exercised its informed discretion. *Cf. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (a decision is "committed to agency discretion" under the Administrative Procedure Act, thereby precluding judicial review, when a statute is "drawn in such broad terms that in a given case there is no law to apply") (citation omitted).

We recognize, of course, that this does not preclude a constitutional challenge, claiming that the Commission's decision was so arbitrary as to violate due process. Marshall makes allegations of arbitrariness, and the history of this case makes them understandable. The combination of the Commission's failure to comply with either the statute's *or* the district court's requirement of a statement of reasons explaining the denial of parole, and the appearance of vindictiveness in imposing a penalty for a previously-ignored infraction only after a successful appeal, arguably raises an inference of bad faith on the part of the Commission.

■ However, even if this were enough to implicate due process, the district court's remedy would be excessive. Unlike the Commission's initial decision to rate Marshall's offense severity as Category 6, which the Commission failed to explain in spite of two separate opportunities and three separate requirements (the statute, the court order, and the Commission's own regulations [22]), the Commission has never been under any obligation to explain its

decision to place Marshall at the top of the guidelines. Thus an appropriate remedy, if there were a sufficient appearance of arbitrariness, would be a remand to the Parole Commission for an explanation of its decision. Such a remedy would be inappropriate here, however, because a sufficient explanation for the Commission's decision is apparent from the record.[23]

■ As already noted, *see supra* p. 936, while free on bail after his first arrest and guilty plea, Marshall apparently showed no remorse for his behavior, as he became reinvolved in the very same activity that led to his troubles with the law. He was rearrested, and pleaded guilty to a second cocaine offense. A conviction for conduct committed while free on bail has been held sufficient to constitute aggravating circumstances to justify a decision to go *above* the guidelines. *Wiggins v. Nelson,* 510 F.Supp. 666 (D.Conn.1981). We see no reason why this behavior alone would not constitute ample justification for a decision at the top of, but within, the guidelines. Moreover, Marshall's pre-arrest background did not cry out for leniency. The Commission could reasonably have concluded, and considered the fact that, as a law school graduate, Marshall should have known better than to get involved in his illicit activities.

Finally, we can dispose quickly of Marshall's alternative ("outside-guidelines") argument. The Commission's decision to assign Marshall a release date beyond the Category 5 guideline maximum of 36 months was not a decision "notwithstanding the guidelines," as that phrase was meant in § 4206(c). The guidelines themselves authorize the disciplinary penalty imposed upon Marshall, *see* 28 C.F.R. § 2.36(a)(1) (1986), and therefore the addition of four months to his term of incarcer-

---

**22.** 28 C.F.R. § 2.13(c) provides, in pertinent part: "Whenever the Commission initially establishes a release date (or modifies a release date thereafter), the prisoner shall also receive in writing the reasons for that decision." We note that this regulation predates the statutory requirement of a statement of reasons. *See Zannino,* 531 F.2d at 690.

**23.** We contrast this with the record existing at the time of the district court's first remand for an explanation of the Commission's decision to rate Marshall's offense severity as Category 6; the justification for that Commission decision was not at all apparent from the record. *See supra,* pp. 943–44.

ation was within the guidelines. Moreover, even if the decision were deemed outside the guidelines, the Commission has provided ample "good cause," *viz.*, Marshall was found guilty of marijuana usage while in prison.

## VI. CONCLUSION

For the foregoing reasons we will affirm the district court's order requiring the Parole Commission to recategorize petitioner's offense severity rating as Category 5. However, we will reverse the order granting the writ of habeas corpus.[24]

GARTH, Circuit Judge, concurring and dissenting:

While I agree with the majority of the court that the writ of habeas corpus was issued by the district court in error, and that Marshall must be returned to prison, I cannot agree that a distinction must be drawn between Marshall's first prison infraction (for possession of marijuana) and Marshall's second prison infraction (for a similar offense). Thus, while I concur with the majority's holding that Marshall's severity offense should be classified at not more than Class V, I cannot agree that we may void the penalty assessed by the Commission respecting Marshall's first disciplinary infraction.

I note that the Rescission Guideline, 28 C.F.R. 2.36(a)(1) (1985), relevant to Marshall's first infraction, would have limited the sanction imposed to postponement of Marshall's presumptive release date anywhere from one to sixty days. Indeed, discretion was vested in the Commission to impose no sanction whatsoever if it deemed that a lack of punishment was appropriate. As the Guidelines subsequently evolved, they provided for postponement of a prisoner's release date by "0–60" days for each

instance of misconduct, or a postponement of "0–120 days in the case of use or simple possession of illicit drugs." 28 C.F.R. § 2.36(a)(1) (1986). The penalties under the Guidelines were thereafter increased to a point where the Parole Commission could postpone Marshall's release date by anywhere from "0 to 8 months" if Marshall was found to possess or use marijuana, an illicit drug.

In Marshall's case, the Parole Commission imposed a two-month sentence for his first infraction and an additional four month sentence for his second infraction. The majority of this court has voided Marshall's punishment for his first infraction on the ground that no punishment had been imposed for this infraction when the Commission set Marshall's initial release date. This was so, even though Marshall's first marijuana infraction had already appeared on his record. The majority deduces from this circumstance that a sufficient appearance of vindictiveness was created to invoke the rule on retaliation announced in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), Maj. op. at 950, since the Commission did not add the two month sanction to Marshall's parole guideline score until after Marshall sought relief in the district court.

*Pearce* involved the resentencing of a criminal defendant after a successful appeal which forced the state to retry and reconvict him. In such a circumstance, the Supreme Court held that due process forbade a greater sentence being imposed after Pearce's second conviction than he had received after his first conviction, if the second and greater sentence was imposed in retaliation for Pearce's successful appeal. *Pearce*, 395 U.S. at 723–25, 89 S.Ct. at 2079–80. In reaching its result, the majority analogizes the action taken by the Parole Commission in establishing punish-

---

24. The Commission will now have discretion to assign Marshall a release date based on a guideline range of 24–40 months (the Category 5 range of 24–36 months, plus 0–4 months for the second disciplinary infraction). We presume, however, that the Commission will exercise its discretion in light of Marshall's circumstances since his release from prison. *Cf. Roth v. United States Parole Commission*, 724 F.2d 836, 841

(9th Cir.1984) ("in light of the 9 months he has lived outside prison as a member of civilian society ... the district court ... may wish to permit the Commission to reconsider [petitioner's] parole eligibility and decide whether he would make better progress toward rehabilitation by remaining on parole") (citation omitted).

ments for administrative infractions, to the situation discussed in *Pearce.*

*Pearce,* however, deals with challenges to *court convictions, not* with Parole Commission proceedings which do not involve convictions. In *Pearce,* the defendant had successfully appealed from his original conviction. After his reconviction and resentencing, the Supreme Court held that his enhanced second sentence was unconstitutional. The Supreme Court reasoned that if it were to hold otherwise, the fear of vindictiveness against a defendant for having successfully attacked his first conviction might unconstitutionally deter, or chill, the defendant's exercise of his right to appeal.

Here, however, Marshall has not attacked the Commission's finding that he committed his first drug infraction. Indeed, that infraction is admitted. Because the Commission's action in assessing punishments for admitted violations could in no way deter the exercise of Marshall's rights, no comparability exists between *Pearce* and the case before us today.

In a similar setting, i.e., the revocation of good time credits by prison administrators, the Supreme Court has stated, "[r]evocation of good time credits is not comparable to a criminal conviction." *Superintendent v. Hill,* 472 U.S. 445, 456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). Moreover, unlike the standard applicable in *North Carolina v. Pearce,* we are instructed that we may not interfere with Parole Commission punishments resulting from prison infractions if there is "some evidence" that the infraction occurred. *Hill,* 472 U.S. at 456, 105 S.Ct. at 2773. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.*

No one, particularly Marshall, contests the fact that Marshall had committed two prison infractions when he tested positive for marijuana on two different occasions. Thus, there is uncontradicted evidence of these critical facts—evidence which more than meets the "some evidence" test mandated by *Superintendent v. Hill, supra.*

. Because I believe we are bound to employ the standard of "some evidence" established by *Superintendent v. Hill,* and because I do not believe that we can expand the principle of *North Carolina v. Pearce* to prison infraction sanctions imposed by the Parole Commission, and further, because the record in my opinion does not support an "appearance of vindictiveness," I am unwilling to assume that the Commission was retaliating against Marshall. I therefore dissent from so much of the majority opinion which has refused to give effect to the Commission's punishment of Marshall's first infraction. On Marshall's return to prison, I would hold that Marshall is subject to serve the full six months assessed by the Commission.