**UNITED STATES of America**

v.

**Noel Gene WOOTON, Appellant.**

**No. 74–2212.**

United States Court of Appeals, Third Circuit.

Argued June 3, 1975.

Decided June 20, 1975.

Certiorari Denied Oct. 14, 1975. See 96 S.Ct. 196.

Leonard G. Ambrose, III, Erie, Pa., for appellant.

James J. West, Richard L. Thornburgh, U. S. Atty., Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

█ In this appeal from a conviction for unlawful flight to avoid prosecution, interstate transportation of a stolen motor vehicle and kidnapping, for which a life sentence was imposed, appellant assigns numerous trial errors. Only one contention merits discussion: whether a district judge, during *voir dire* of prospective jurors, must inquire, when requested, if the veniremen can accept and will apply the legal proposition that the government must prove every element of the crime charged beyond a reasonable doubt. We find that the failure to ask such questions does not, in and of itself, constitute an abuse of discretion cognizable as reversible error. Accordingly, we affirm.

Appellant was arrested in California and confessed to the burglary of an Erie, Pennsylvania, department store in November 1973, to the armed robberies of two Erie grocery stores on December 12, 1973, and to the kidnapping of taxi driver Stafford during the course of appellant's flight. The government proved to the satisfaction of the jury that Wooton stole Stafford's taxi, drove him to Ohio, marched him from the roadway, and, as Stafford knelt in front of him, shot and killed him. He then drove the cab to Cleveland where he abandoned it and moved westward until apprehended in California. Subsequently, appellant was returned to Pennsylvania.

When the case was called for trial, counsel for appellant submitted a proposed *voir dire* examination of 42 questions. Four of these related to the reasonable doubt standard:

(30) Can you accept the proposition of law that the government must prove every material element of the crime charged beyond all reasonable doubt and that if the government would fail to meet this burden, it would be your duty to find the defendant not guilty? Can you accept this proposition of law without any mental reservations whatsoever?

(31) If you, in your own individual judgment, came to the conclusion that the government had not proven beyond all reasonable doubt that at the time the defendant committed the crimes in question he was sane and of sound mind, would you have any scruples or difficulty bringing in a verdict of not guilty?

(40) Do you, as an individual, understand the rule of law that says that this defendant, as every defendant in a criminal case, is entitled to your individual judgment and can you follow that rule without any mental reservations whatsoever?

(41) If you came to the conclusion that the government has not proved beyond all reasonable doubt that at

the time the defendant committed the crimes in question, he was sane and of sound mind, and you found that a majority of the jury believed that defendant was sane and of sound mind at the time he committed the crimes in question, would you change your vote only because you were in a minority?

The court declined to ask these questions, reasoning[1] that the subject would be covered in its charge and by another of defendant's proposed inquiries with which the court agreed:

(42) Do you know of any reason why you should not be seated on this jury, or why if seated, you would not be able to render a fair and impartial verdict based solely upon the evidence presented during the course of this trial and upon the law as the court will give you at the conclusion of this trial?

█ We begin with the understanding that *voir dire* is a preliminary examination to ascertain the qualifications of potential jurors as well as any disqualifying bias or prejudice. Literally, the term means "to speak the truth" and denotes the oath administered.

█ In criminal cases, the *voir dire* examination is covered by Rule 24(a), F.R.Crim.P.[2] The constitutional basis of the Rule—the Sixth Amendment's guarantee of an "impartial jury . . . in all criminal prosecutions"—defines its central purpose, namely, to weed out veniremen incapable of rendering a fair and impartial verdict. Judicial Conference Committee on the Operation of the Jury System, the Jury System in the Federal Courts, 26 F.R.D. 409, 465 (1960) [hereinafter cited as Jury System Report]. *See Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *United States v. Liddy,* 509 F.2d 428, 434–35 (D.C.Cir. 1974). The Rule allows parties to propound questions which may assist them in the intelligent exercise of peremptory challenges and challenges for cause. 2 C. Wright, Federal Practice and Procedure ¶ 382 (1969). However, in conducting the *voir dire* and in deciding what questions shall be asked, the trial judge has "broad discretion". *Ham v. South Carolina,* 409 U.S. 524, 528, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). The reasons for vesting such discretion are twofold: "first, to see that the voir dire examination actually is effective in obtaining an impartial jury, and second, to see that this result is obtained with reasonable expedition." Jury System Report 465–66. Thus, certain well-settled principles guide our decision:

The trial court has "a broad discretion as to the questions to be asked" on *voir dire* examination of prospective jurors, but its exercise is "subject to the essential demands of fairness."

A defendant has "[t]he right to examine jurors on the *voir dire* as to the existence of a disqualifying state of mind."

The trial court, while impaneling a jury, "has a serious duty to determine the question of actual bias * * *."

"The *voir dire* in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories [peremptory challenges] * * *."

A defendant "is entitled to be tried by an unprejudiced and legally qualified jury", and "[t]he range of inquiry in the endeavor to impanel such a jury should be liberal * * *."

A defendant has the right "to probe for the hidden prejudices of the jurors."

*United States v. Napoleone,* 349 F.2d 350, 353 (3d Cir. 1965) (footnotes omitted).

---

1. *See* N.T. 20.

2. *Examination.* The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

In the past we have not been hesitant to order a new trial where a *voir dire* examination omitted inquiries relevant to the discovery of actual bias. *United States v. Poole,* 450 F.2d 1082 (3d Cir. 1971) (whether veniremen had been victims of crime); *United States v. Napoleone, supra* (whether veniremen had repugnance toward liars or lying). Here, however, appellant seeks an extension of orthodox *voir dire* inquiry. He would have us mandate that prospective jurors state during *voir dire* that they accept and can apply the substance of a legal precept which necessarily would be treated in the court's instructions to the jury.

■ In urging such an extension of the scope of *voir dire,* appellant confuses an inquiry as to whether one's personal convictions would preclude one from rendering an impartial verdict—a proper function of *voir dire*—with an inquiry as to whether one agreed with a rule of law. In the division of responsibilities between judge and jury, the jurors have no prerogative to question in the slightest degree the law to be applied to an issue, as announced by the court in its instructions. Indeed, the jurors each swear to render a "true verdict" "according to the evidence and the law as given you by the Court".[3] Moreover, the court *did* cover this issue during *voir dire* by asking, almost verbatim,[4] defendant's propounded question No. 42. *See* pages 944–945, *supra.*[5] Thus, once the

jurors either took the juror's oath or made the juror's affirmation they were bound to render a verdict under the law as given by the court, including the court's charge on reasonable doubt.[6] Accordingly, it is not necessary to inquire as to whether a juror will refuse to do that which he swears or affirms he will do.

Considerations of the policy reasons for vesting the trial judge with "broad discretion" in the first place, *see* page 945, *supra,* buttress our conclusion. Specifically, we find that the trial court's exercise of discretion offended neither the policy of guaranteeing impartiality nor that of avoiding unnecessary delay. As previously rehearsed, the inquiries refused did not seek to expose a disqualifying bias or impartiality; rather, they related to a rule of law and the jurors' willingness to apply it.

Similarly, the refusal to make the requested inquiries was congruent with the desire for "reasonable expedition". Were a trial judge required, under the guise of testing a juror's impartiality during *voir dire,* to submit the many questions of constitutional, substantive and procedural law that must be contained in instructions to the jury, the public interest in "reasonable expedition" would be thwarted. Innumerable delays would result. The procedure would generate objections and arguments over the relevance of legal propositions asserted prior to the reception of evidence. Nor

**3.** The jurors' oath as administered in the Western District of Pennsylvania provides:

You and each of you do solemnly swear by almighty God that you will well and truly try this issue joined between .......... and .......... at No. .......... and a true verdict render according to the evidence and the law as given you by the Court, so help you God.

Where one's personal beliefs prevent the taking of an oath, one makes a parallel "affirmation".

**4.** We note in passing that requested inquiry No. 42 was substantively similar to Standard Questions for Voir Dire Nos. 3(w) and 3(x), as contained in the Benchbook for United States District Judges, a publication prepared under the auspices of the Federal Judicial Center after compilation by the staff of the Institute of Judicial Administration under the supervision

of a committee of district court judges. By contrast, requested inquiries Nos. 30, 31, 40, 41 have no corollary in the Standard Questions. *Cf. United States v. Poole, supra,* 450 F.2d at 1084.

**5.** In this respect, the case before us is not unlike *Hamling v. United States,* 418 U.S. 87, 140, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), where the Supreme Court concluded: "Failure to ask specific questions . . . did 'not reach the level of a constitutional violation,' . . . nor was it error requiring the exercise of our supervisory authority over the administration of justice in the federal courts." *See also Ham v. South Carolina, supra,* 409 U.S. at 527, 93 S.Ct. 848.

**6.** Appellant does not contest the adequacy of the court's charge on reasoable doubt. *See* N.T. 1137–40.

is it enough to suggest, as appellant does, that because the reasonable doubt charge is contained in every criminal case, the inquiry would not be burdensome. If the principle is valid as to the reasonable doubt inquiry, it would also be valid for similar inquiries as to other instructions mandated in every criminal case, including a definition of the offense, credibility guidelines, and the requirement of unanimity. Moreover, the brute fact remains that although the reasonable doubt standard obtains in all criminal cases, it is nonetheless a rule of law and, as such, the jurors swear (or affirm) to abide by it.

Accordingly, we hold that it was not an abuse of discretion for the trial court to preclude examination of prospective jurors as to their acceptance of a proposition of law which, in this case, was contained in the court's charge. *United States v. Crawford,* 444 F.2d 1404 (10th Cir.) (per curiam), *cert. denied,* 404 U.S. 855, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971); *United States v. Gillette,* 383 F.2d 843 (2d Cir. 1967); *Grandsinger v. United States,* 332 F.2d 80 (10th Cir. 1964) (per curiam); *Stone v. United States,* 324 F.2d 804 (5th Cir. 1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964).[7]

Appellant raises certain other issues foreclosed by recent decisions in this court. His contention of improper delay between arrest and appearance before a magistrate is adequately covered by *Government of the Virgin Islands v. Gereau,* 502 F.2d 914, 922–24 (3d Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). Similarly, *United States v. Crook,* 502 F.2d 1378 (3d Cir. 1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975), disposes of the argument that the statements of December 19 and December 27 should have been suppressed. We have considered appellant's other contentions and find them without merit.[8]

The judgment of the district court will be affirmed.

---

7. We recognize that a divided Sixth Circuit has held to the contrary. *United States v. Blount,* 479 F.2d 650 (6th Cir. 1973). Believing that the majority opinion there did not address the panoply of considerations marshaled heretofore, which we deem significant and controlling, we decline to follow our sister Circuit.

8. Appellant contended that the district court erred in refusing to grant pre-trial discovery and inspection of statements made by the defendant to non-government agents; in refusing to allow the defendant's counsel to make his opening statement to the jury at the conclusion of the prosecution's opening statement; in allowing cross-examination of defense expert witnesses regarding whether appellant knew what he was doing at the time of the kidnap and murder, whether he was a proper subject for commitment to a mental institution, whether the majority of prison popula-

tions are comprised of individuals suffering from the same or similar disorder as appellant, and in allowing the government's experts on rebuttal to testify that the defendant was not a proper subject for commitment to a mental institution and that the majority of prison populations are made up of individuals suffering from the same or similar defect as the appellant; in denying defense counsel's motion for a mistrial because of the inflammatory and prejudicial closing remarks made by the prosecutor; in failing to instruct the jury that a not guilty verdict would result in commitment to a mental hospital; and in not instructing the jury that in determining the guilt or innocence of the defendant they should not give any consideration to the matter of punishment or disposition for this matter is exclusively the responsibility of the court.