NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1717
_____

UNITED STATES OF AMERICA

v.

TIMOTHY SNARD,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cr-00212-001)
District Judge:  Honorable James Knoll Gardner
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2012

Before: SLOVITER, RENDELL and HARDIMAN, *Circuit Judges*.

(Filed: September 21, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Timothy Snard appeals his judgment of conviction and sentence after a jury found

him guilty of knowingly possessing with the intent to distribute cocaine in violation of 21

U.S.C. § 841(a)(1), knowingly possessing a firearm in furtherance of a drug-trafficking

crime in violation of 18 U.S.C. § 924(c), and knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history. The facts adduced at the suppression hearing and trial are not in dispute.

A

Sade Johnson called the Allentown, Pennsylvania, police and told them that a "wanted" man named "Timothy Snard" or "Victor Brewington" could be found in Room 434 at the Hotel Traylor. She disclosed Snard's date of birth and said he had a gun and drugs. The police ran the information through a database and found an outstanding New York warrant for Victor Brewington, also known as Timothy Snard, whose birthday matched the date provided by Johnson except for the year, which was off by one. The database also provided a physical description of Snard.

Police officers responded to Room 434. Recognizing the possibility that the room's occupant could be armed, one officer attempted to coax Snard out with a ruse. When Snard rebuffed this attempt, the officer identified himself as a police officer and ordered the door open. Snard asked the police for whom they were looking, and the police responded "Timothy Snard." After a moment, Snard opened the door, greeted the officers in his undergarments, and identified himself as "Victor Brennington." Because

2

Snard's appearance was consistent with the database's description, the police placed Snard under arrest and handcuffed him. Snard asked for his pants and moved toward the bed in the back of the room, where he sat down. The officers followed Snard into the room and ordered him back to the door.

The officers then began a protective sweep of the hotel room. They patted the bed and checked the bathroom and closet. One officer provided protective cover as another lifted the mattress and box spring to see if anyone was under the platform-style bed, which sat on an approximately one-foot-high box frame that was recessed eight to twelve inches from the sides of the box spring. As the mattress was raised, a firearm, thirty-nine rocks of crack cocaine, and a bag of marijuana fell from a hole in the box spring. Drug paraphernalia—digital scales, baggies, and a razor blade—was nearby in plain view on the desk and night stand. As Snard got dressed, he told the officers that Johnson was his girlfriend and that they had been living at the hotel for two weeks.

B

Following his indictment on three firearm and drug offenses, Snard moved to suppress the contraband seized in the hotel room, and the District Court denied the motion. As the trial approached, the parties and the Court agreed to sever the trial on the felon-in-possession count from the trial on the other two counts. On October 19, 2009, the Government filed a motion *in limine* to introduce evidence of Snard's prior New York state felony drug conviction pursuant to Federal Rule of Evidence 404(b). Before ruling

on the motion, over the next two days, the Court conducted jury selection, during which

one potential juror inquired as to whether the charged crimes were Snard's "first offense."

The Court refused to answer the question.  The jury was empanelled and sworn.  The

following day, October 22, the Court granted the Government's motion, ruling that

evidence of Snard's prior felony drug conviction was admissible on all counts.

Therefore, the Court determined that a bifurcated trial was unnecessary.

After the Government rested, Snard moved for a judgment of acquittal, but the

Court denied the motion.  The jury returned a guilty verdict on all counts.  Snard then

moved for a new trial, but that motion was dismissed for failure to file an accompanying

brief.  The District Court held a sentencing hearing, after which it sentenced Snard to a

total of 264 months' incarceration, eight years' supervised release, a $2,000 fine, and a

$300 special assessment.  Snard timely appealed.

II

Snard raises six issues on appeal, three of which require analysis.[1]  We consider

---

[1] Snard concedes that his argument that the police illegally "forced" their way into his hotel room was waived in the District Court.  *See United States v. Rose*, 538 F.3d 175, 177, 182–84 (3d Cir. 2008).  Nor will we consider his ineffective-assistance-of-counsel claim (regarding the waiver of the suppression argument) on direct review.  *See, e.g.*, *United States v. McLaughlin*, 386 F.3d 547, 555–56 (3d Cir. 2004) (citing *Gov't of V.I. v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984)).  Finally, there was ample evidence from which a jury could find both that Snard constructively possessed the drugs and the gun and that the gun was possessed in furtherance of the drug-trafficking offense.  The facts of Snard's case are not remotely similar to the facts in *United States v. Brown*, 3 F.3d 673, 681 (3d Cir. 1993), and *United States v. Jenkins*, 90 F.3d 814, 820 (3d Cir. 1996), where we found significant the presence of others.  And the jury easily could have found that Snard

4

each argument in turn.

A

Snard claims that the warrantless search of the hotel room violated his rights under the Fourth Amendment. We disagree. "Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). We review the District Court's legal conclusions *de novo*, and we review its factual determinations for clear error. *Id.* (citing *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005)).

The District Court correctly found, based on officer testimony at the suppression hearing, that the search under the box spring and mattress was permissible under the "protective sweep" doctrine of *Maryland v. Buie*, 494 U.S. 325 (1990). *United States v. Snard*, No. 09-cr-00212, 2009 WL 3105271, at *8 (E.D. Pa. Sept. 27, 2009). When Snard opened his door for the police, they immediately placed him under arrest. He then chose to walk back into the hotel room to dress, which allowed the officers to follow in order to effectuate the arrest pursuant to the outstanding arrest warrant. *See Buie*, 494 U.S. at 330 (citing *Payton v. New York*, 445 U.S. 573, 602–03 (1980)). Once inside, "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or

---

possessed the firearm "in furtherance of" the drug-trafficking offense, 18 U.S.C. § 924(c)(1)(A), under the factors articulated in *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004).

5

reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."[2] *Id.* at 334. "[S]uch a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 335.

The question, then, becomes whether a person could have been found under the box spring and within the bed frame. The District Court's findings, which are not clearly erroneous, are as follows:

> The bed was a platform-type bed which rested on top of four wooden slats in the form of a rectangle. The bed was ten to twelve inches off the ground. The mattress overlapped the box frame by eight to twelve inches, but Officer Brixius did not know how the bed frame was constructed until he lifted the mattress, and he believed that a person easily could have been hiding under it.

*Snard*, 2009 WL 3105271, at *4. The Court concluded that although "[i]n hindsight, it appears . . . unlikely that someone was under the bed because of the type of platform frame," the officers' belief that someone could have been under the bed was objectively reasonable. *Id.* at *10–11.

---

[2] *Buie* also permits a broader search of a residence beyond "closets and other spaces immediately adjoining the place of arrest," but only upon the heightened showing of "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." 494 U.S. at 334. Because the area under the bed was a "space[] immediately adjoining the place of arrest," the Government was not required to meet this more difficult burden.

In our view, the District Court appropriately applied the "objective reasonableness" inquiry used to evaluate officers' beliefs and actions in cases arising under the Fourth Amendment. *See, e.g.*, *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). In doing so, the Court correctly held that the *Buie* inquiry of whether a space can hold a person is judged from the *ex ante* perspective of an objectively reasonable officer. *See United States v. Green*, 560 F.3d 853, 857 (8th Cir. 2009) (rejecting the defendant's argument based on *ex post* measurements demonstrating that the top portion of a dresser could not completely conceal a person where a police officer "stood on a chair to obtain a better view of [the top area of the dresser] where it was reasonable to believe a person could be hiding" because the police "must act quickly and decisively to minimize the risk of ambush"). Consequently, the search fell under *Buie*'s exception to the warrant requirement.[3]

B

Snard next asserts that the evidence of his prior drug-offense conviction was not admissible under Rule 404(b), and therefore he should have received a bifurcated trial.

---

[3] Snard relies heavily on *United States v. Blue*, 78 F.3d 56 (2d Cir. 1996), in which the Second Circuit held a search illegal under *Buie*. But unlike the officers' articulated reasonable belief here that the area under the box spring could harbor a person, *Blue* concerned whether it was reasonable to believe that the area between the box spring and mattress could contain a person. *Id.* at 57–58, 60–61. "When the agents entered into Blue's apartment unannounced, [the bed] was compressed by Blue, who was sitting" on it, making it unreasonable to have believed a person could have been concealed in that space. *Id.* at 61.

7

We review decisions to admit evidence under Rule 404(b) and to bifurcate a trial under the familiar abuse-of-discretion standard. *United States v. Berrios*, 676 F.3d 118, 130 (3d Cir. 2012) (citing *United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001)) (Rule 404(b) evidence); *United States v. Joshua*, 976 F.2d 844, 847 (3d Cir. 1992) (citing *United States v. Sandini*, 888 F.2d 300, 305 (3d Cir. 1989)) (bifurcation), *abrogated on other grounds by Stinson v. United States*, 508 U.S. 36, 40 n.2 (1993). "To the extent that our review of this ruling requires us to consider the district court's interpretation of the rules of evidence our review is plenary." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003).

*Givan* controls Snard's case. There, police stopped a car with three occupants and found 113.5 grams of heroin under the back seat. *Id.* at 456. One of the three, Givan, argued on appeal that the district court erroneously admitted his prior felony drug offense under Rule 404(b) in his trial on drug possession and conspiracy charges. *Id.* at 457, 460. We held that

> [i]nasmuch as a showing of knowledge, intent and lack of mistake or accident was essential for the government to meet its burden of proof in this case, and the 1993 felony drug conviction was evidence that the jury could consider as shedding light on the key issues of whether Givan knew about the drugs in the vehicle, the court admitted the prior felony conviction for a proper purpose [under Rule 404(b)].

*Id.* at 461. We also approved of the admission under Rules 401 and 403, noting the import of the district court's limiting instruction. *Id.* at 461–62.

As in *Givan*, the Government here needed to prove knowledge and intent to satisfy

8

its burden of showing knowing possession with intent to distribute, and the District Court delivered a limiting instruction. Accordingly, the District Court did not abuse its discretion in admitting the prior conviction, from which it logically follows that there was no abuse of discretion in deciding not to sever the felon-in-possession count from the trial on the other two counts.

C

Snard's next assertion is related to his previous one. He contends that his right to question potential jurors during *voir dire* was violated because the Court ruled on the motion *in limine* and decided not to bifurcate the trial after the jury had been sworn. Snard points to the exchange between the Court and the prospective juror who inquired about Snard's criminal history in his attempt to illustrate how jurors might have inherent bias and prejudice toward persons with criminal pasts.[4] The crux of his argument is that, had he known the prior conviction was to be admitted and the trial was not to be bifurcated, he would have submitted different questions to the Court regarding the jurors' biases and abilities to follow limiting instructions, or exercised his peremptory challenges in a different fashion.

We discern no violation of Snard's constitutional rights relative to the *voir dire* process.[5] We have previously held that it is "not an abuse of discretion for the trial court

---

[4] This prospective juror was not selected for the jury.

[5] The Government contends Snard waived this argument, but we disagree. After the jury

to preclude voir dire examination pertaining to a question of law involved in the case."
*Jacobs v. Redman*, 616 F.2d 1251, 1256 (3d Cir. 1980) (citing *United States v. Wooton*, 518 F.2d 943, 947 (3d Cir. 1975)).  There is a difference between examining a potential juror's "personal convictions" for possible bias and a juror's ability to follow the law as instructed by the court.  *Wooton*, 518 F.2d at 946.  A defendant has a right to have the jurors questioned about the former, but it is not an abuse of discretion for the trial judge to refuse questions regarding the latter, because "it is not necessary to inquire as to whether a juror will refuse to do that which he swears or affirms he will do."  *Id.*  Thus, in *Wooton*, we found no error where potential jurors were not questioned about their ability to follow a reasonable-doubt instruction.  *Id.* at 944, 946.  In *Jacobs*, we applied that holding to proposed questions regarding jurors' ability to follow the court's instructions on "accomplice testimony, the burden of proof, and the right of [the] defendant to remain silent."  616 F.2d at 1255.

Questions of whether a juror would be able to follow the Court's instruction regarding the use of a prior conviction are akin to the questions at issue in *Wooton* and *Jacobs*.  The District Court would have been within its discretion in declining to examine the jurors about their ability to follow the Court's limiting instruction on that conviction.  And because the Court could have declined to examine the jurors in the way that might

---

was sworn, the Court issued its decision on the motion, which was adverse to Snard, and decided not to bifurcate the trial.  At his next available opportunity, Snard's counsel lodged his objection to the jury-selection procedure in light of the bifurcation decision.

have been urged by defense counsel, we find no reversible constitutional violation resulted from selecting a jury prior to ruling on the motion *in limine*. Put another way, any error that arose from ruling on the evidentiary and bifurcation issues after selecting the jury was harmless.[6] *Cf. Rivera v. Illinois*, 556 U.S. 148, 156–59 (2009) (holding that no violation of due process resulted where a state defendant was erroneously denied a peremptory challenge and that harmless-error analysis could be applied to that circumstance); *United States v. Martinez-Salazar*, 528 U.S. 304, 315–17 (2000) (finding no due-process violation where the defendant was required to use a peremptory challenge to remove a juror that the trial court should have removed for cause because the defendant received an impartial jury, which is all the Constitution mandates).

### III

For the aforementioned reasons, we will affirm the judgment of conviction and sentence.

---

[6] In any event, the District Court adequately questioned the jurors on their ability to follow its instructions.